PEOPLE v BARTLETT

Docket No. 201860. Submitted February 5, 1998, at Lansing. Decided
    August 11, 1998, at 9:15 A.M.
        Thomas A. Bartlett was convicted by a jury in the Grand Traverse Cir-
    cuit Court, Joseph E. Deegan, J., of knowingly keeping or maintain-
    ing a drug house. The defendant appealed.
        The Court of Appeals held:
        1. The trial court correctly instructed the jury that conviction
    required proof beyond a reasonable doubt that the defendant kept
    or maintained a dwelling or building, that the building kept or
    maintained by the defendant was used for keeping, selling, or using
    controlled substances, that the defendant knew that the building
    was used for keeping or selling controlled substances, and that the
    defendant had some general control over the dwelling or building.
    General control, rather than general supervisory control, over the
    dwelling or building at issue is sufficient. In this case, the jury
    could have concluded from the evidence that the defendant had
    control over the first floor of the dwelling at issue because he
    shared occupancy of a bedroom on that floor with a person to
    whom he paid rent and because drug paraphernalia and a weapon
    were found by the police in a search of the bedroom.
        2. The trial court did not err in instructing the jury that it could
    infer general control from the defendant's payment of rent.
        3. The trial court did not err in instructing the jury about aiding
    and abetting. Such instruction was proper because there was evi-
    dence that more than one person was involved in committing the
    crime at issue and the defendant's role in the crime may have been
    less than direct participation in the wrongdoing.
        4. The trial court erred in allowing into evidence the hearsay tes-
    timony of a police officer who related that another officer had told
    him that the defendant was found lying in bed in the bedroom that
    was searched by the police. However, the error was harmless
    because the jury heard the same information from another police
    witness to whose testimony the defendant did not object.
        5. The trial court did not err in refusing to give the jury instruc-
    tion regarding specific intent, CJI2d 3.9, to the jury. The instruc-
    tions that were given adequately informed the jury of the intent

required for conviction, fairly presented the issues to be tried, and sufficiently protected the defendant's rights.

Affirmed.

1. CRIMINAL LAW — JURY INSTRUCTIONS — APPEAL.

Jury instructions in a criminal trial are reviewed on appeal as a whole to determine whether there is error requiring reversal; the instructions must include all the elements of the charged offense and must not omit material issues, defenses, and theories if the evidence supports them; even if somewhat imperfect, instructions do not create error if they fairly present to the jury the issues tried and sufficiently protect the defendant's rights (MCL 769.26; MSA 28.1096).

2. CONTROLLED SUBSTANCES — KNOWINGLY KEEPING OR MAINTAINING A DRUG HOUSE — GENERAL CONTROL.

A person need only have general control, not supervisory control, over a dwelling resorted to by persons using controlled substances in violation of the controlled substances provisions of the Public Health Code or used for keeping or selling controlled substances in violation of the controlled substances provisions of the Public Health Code in order to be guilty of knowingly keeping or maintaining a drug house (MCL 333.7405[d]; MSA 14.15[7405][d]).

3. CONTROLLED SUBSTANCES — KNOWINGLY KEEPING OR MAINTAINING A DRUG HOUSE — GENERAL CONTROL — PAYMENT OF RENT.

General control over a dwelling or a part thereof, as an element of the offense of knowingly keeping or maintaining a drug house, may be inferred from a person's payment of rent to occupy the dwelling or part of the dwelling (MCL 333.7405[d]; MSA 14.15[7405][d]).

4. CRIMINAL LAW — AIDING AND ABETTING — JURY INSTRUCTIONS.

A jury may be instructed about aiding and abetting where there is evidence that more than one person was involved in committing a crime and the defendant's role in the crime may have been less than direct participation in the wrongdoing.

5. CRIMINAL LAW — EVIDENCE — APPEAL.

The admission of challenged evidence in a criminal trial is reviewed on appeal for abuse of discretion by the trial court; erroneously admitted evidence will be deemed harmless if it did not prejudice the defendant.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Dennis LaBelle*, Prosecuting

Attorney, and *Michael J. Stein*, Assistant Prosecuting Attorney, for the people.

*Roman S. Grucz*, for the defendant.

Before: MARKEY, P.J., and BANDSTRA and MARKMAN, JJ.

MARKEY, P.J. Defendant appeals by right his jury trial conviction for knowingly keeping or maintaining a drug house, MCL 333.7405(d); MSA 14.15(7405)(d). Defendant was sentenced to serve six months in jail. We affirm.

This case stems from an investigation by the Traverse Narcotics Team (TNT) of a residence on Eighth Street in Traverse City. Undercover TNT agents observed several occurrences indicative of drug trafficking at the house, including numerous people entering the residence, staying for five to ten minutes, and leaving. Agents also engaged in at least two controlled buys of marijuana (one performed with prerecorded bills) from individuals at the residence, although not from defendant.

When police executed a search warrant for the first story of the residence, they found defendant, Billy Mitchell, and Blaine VanPelt present. Michigan State Police Detective John Turnquist testified that after he read defendant his *Miranda*[1] rights, defendant agreed to speak with him. According to Detective Turnquist, defendant admitted that he was sleeping in a small room at the front of the residence facing Eighth Street; the room, presumably a living room, had a large picture window facing the street. Detective Turnquist also testified that defendant was sleeping in

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

the same bedroom as Mitchell but in a different bed. The police found a sawed-off shotgun under one of the mattresses in that bedroom. The police recovered many items of drug paraphernalia, including marijuana pipes, rolling papers, a triple-beam scale, and small plastic bags in the bedroom where defendant and Mitchell were found.

Defendant told Detective Turnquist that he resided at that same Eighth Street residence and that he paid $120 to Mitchell for rent, although he was behind in his payments. He admitted to Detective Turnquist that he was aware of the drug trafficking from the residence but denied any involvement and contended that all of the sales were done behind closed doors outside his presence.[2] Defendant also admitted that he knew there was a gun in the house but did not know where it was located.

Officer Dean Pratt, a narcotics investigator with the TNT, testified that the residence at issue was a large two-story home with separate apartments on the first and second floors and possibly in the basement. Because the TNT unit's search warrant applied only to the first floor of the residence, he did not search the rest of the house. Officer Pratt testified that defendant was in the front room or bedroom when the raid occurred. Despite hearsay objections, Officer Pratt also testified that the officer in charge of securing the front room told Pratt that defendant was in the front bedroom, lying on one of the beds. Pratt himself had only seen defendant standing in the room. Officer Pratt further testified that a summons and complaint

---

[2] Detective Todd Golnick, a member of the TNT, admitted that he did not see defendant in the residence when he conducted one of the controlled marijuana purchases.

found in defendant's bedroom showed the Eighth Street residence as defendant's home address. Although he was in charge of collecting the evidence at the scene, Officer Pratt was uncertain whether the shotgun or shotgun shells bore defendant's fingerprints.

Defendant's mother testified that defendant had been living with Mitchell at the Eighth Street residence for approximately two months before the police raid.

I

Defendant first argues that the trial court erred in instructing the jury that the crime of maintaining a drug house required only "general control" rather than "general supervisory control." Defendant disputes the fact that he had any control or authority to control the use of the residence and contends that the court's improper jury instruction created error requiring reversal. We disagree.

We review de novo claims of instructional error and questions of statutory interpretation. *People v Seeburger*, 225 Mich App 385, 391; 517 NW2d 724 (1997); *People v Hubbard (On Remand)*, 217 Mich App 459, 487; 552 NW2d 493 (1996). This Court reviews jury instructions as a whole to determine whether there is error requiring reversal. *People v Piper*, 223 Mich App 642, 648; 567 NW2d 483 (1997). The instructions must include all the elements of the charged offense and must not omit material issues, defenses, and theories if the evidence supports them. *Id.* Even if somewhat imperfect, instructions do not create error if they fairly present to the jury the issues tried and sufficiently protect the defendant's

rights. *Id.; People v Daniel*, 207 Mich App 47, 53; 523 NW2d 830 (1994); *People v Gaydosh*, 203 Mich App 235, 237; 512 NW2d 65 (1994), citing *People v Caulley*, 197 Mich App 177, 184; 494 NW2d 853 (1992). A conviction shall not be reversed where the error is harmless, however. MCL 769.26; MSA 28.1096. In reviewing a claim that the jury was improperly instructed, we will not reverse a verdict or order a new trial unless, after reviewing the record, it appears to this Court that the error resulted in a miscarriage of justice. MCL 769.26; MSA 28.1096; *People v Hall*, 435 Mich 599, 603-604; 460 NW2d 520 (1990). A miscarriage of justice, or manifest injustice, occurs when an erroneous or omitted instruction pertained to a basic and controlling issue in the case. *People v Johnson*, 187 Mich App 621, 628; 468 NW2d 307 (1991). The defendant usually bears the burden of establishing error requiring reversal stemming from the issuance of an inappropriate jury instruction. See, generally, *People v Minor*, 213 Mich App 682, 685; 541 NW2d 576 (1995).

MCL 333.7405(d); MSA 14.15(7405)(d) states as follows:

> A person . . . [s]hall not knowingly keep or maintain a store, shop, warehouse, dwelling, building, vehicle, boat, aircraft, or other structure or place, which is resorted to by persons using controlled substances in violation of this article for the purpose of using these substances, or which is used for keeping or selling them in violation of this article.

If a criminal jury specifically finds that a violation of this statute was committed knowingly or intentionally, the person is guilty of a misdemeanor punishable by no more than two years' imprisonment, a maxi-

mum fine of $25,000, or both. MCL 333.7406; MSA 14.15(7406).

Unfortunately, the controlled substances act, MCL 333.7101 *et seq.; MSA* 14.15(7101) *et seq.,* does not define "keep or maintain." Moreover, because no published opinion has interpreted the terms "keep or maintain" as they are used in MCL 333.7405(d); MSA 14.15(7405)(d),[3] we are faced with an issue of first impression.

The primary goal of statutory interpretation is to ascertain and give effect to the Legislature's intent, *People v Humphreys,* 221 Mich App 443, 451; 561 NW2d 868 (1997), and the Legislature is presumed to intend the meaning it plainly expressed, *People v Pitts,* 222 Mich App 260, 265; 564 NW2d 93 (1997). "If the plain and ordinary meaning of the [statutory] language is clear, judicial construction is normally neither necessary nor permitted." *Id.,* citing *Heinz v Chicago Rd Investment Co,* 216 Mich App 289, 295; 549 NW2d 47 (1996). If reasonable minds can differ regarding the meaning of a statute, judicial construction is appropriate. *Pitts, supra.* When engaged in statutory construction, we must construe the statutory language according to the common and approved usage of the language and may refer to dictionary definitions when construing the language. *Seeburger,*

---

[3] Our research has revealed that the Legislature uses the phrase "keep and maintain" quite often but, alas, in contexts where it is not critical to define that phrase. See *People v Lopez,* 187 Mich App 305, 308; 466 NW2d 397 (1991) ("keep or maintain a gaming room," MCL 750.303; MSA 28.535); *Killeen v Dep't of Transportation,* 432 Mich 1, 13; 438 NW2d 233 (1989) (keep or maintain county roadways for safe public travel); *Gray v Independent Liberty Life Ins Co,* 57 Mich App 590, 592; 226 NW2d 574 (1975) (keep or maintain minor children as beneficiaries on one spouse's insurance during pendency of divorce).

*supra* at 392. Notably, the interpretations that other jurisdictions give to similar or identical language is of limited value in determining what the Michigan Legislature intended, absent circumstances suggesting that our Legislature considered these statutes or the decisions interpreting them when it enacted or amended the statute at issue. *People v Preuss*, 436 Mich 714, 734; 461 NW2d 703 (1990). These decisions may, however, be illustrative of the policy concerns the Legislature might have considered when adopting the statute and are helpful to our analysis here. See, generally, *id.* at 736.

Black's Law Dictionary (5th ed), defines "keep" to include the following:

> To have or retain in one's power or possession . . . to preserve or retain. To maintain, carry on, conduct, or manage; as, to "keep" a bawdy house, gaming table, nuisance, or the like. To maintain, tend, harbor, feed, and shelter.
>
> *    *    *
>
> To maintain, to cause to continue without essential change of condition. To take care of and to preserve from danger, harm, or loss.

Black's Law Dictionary also defines "maintain" to include:

> Bear the expense of; carry on; commence, continue; furnish means for subsistence or existence of . . . .
>
> *    *    *
>
> The words "maintains" and "maintaining" in statutes prohibiting maintenance of a liquor nuisance denote continuous or recurrent acts approaching permanence.

Additionally, other jurisdictions that have already adopted very similar or identical anti-drug house statutes have interpreted the phrase "keep or maintain." In *Wahrer v State*, 901 P2d 442, 444 (Alas App, 1995), the Alaska Court of Appeals held that Alas Stat 11.71.040(a)(5),[4] which mirrors MCL 333.7405(d); MSA 14.15(7405)(d), requires proof that the defendant knew that the premises were being used for continuing illegal drug activity but not that the defendant actively controlled or participated in the illegal drug activity. Critically, the *Wahrer* court concluded that the statutory phrase "keep or maintain" refers to a defendant's possessing control or having the authority to control the use or occupancy of the structure. *Wahrer, supra* at 444, citing *Dawson v State*, 894 P2d 672, 676-677 (Alas App, 1995).

Thus, the Alaska Court of Appeals approved of the trial court's instruction to the jury that the element of "keep or maintain" would be satisfied if the prosecutor proved that Wahrer (a) knowingly allowed, i.e., was aware of and permitted, (b) other people to conduct business operations, i.e., continuing sales of drugs, (c) in an apartment that she either "control[led] or had the right to control . . . through . . . lease."[5] *Wahrer, supra* at 444.

---

[4] Alas Stat 11.71.040(a)(5) forbids a person to "knowingly keep[] or maintain[] any . . . building, vehicle, boat, aircraft, or other structure or place which is used for keeping or distributing controlled substances in violation of a felony offense under this chapter or AS 17.30. "

[5] Notably, the *Wahrer* court commended the trial court's "careful analysis of the statute" in light of the fact that "most of the important terms in the [maintaining a drug house statute] have no express statutory definition and there is a paucity of legislative history to aid in analyzing the statutory language." *Wahrer, supra* at 444, n 1. We believe that the trial court in the case at bar faced a similar disadvantage.

In *Dawson, supra* at 676, the Alaska Court of Appeals recognized, as we do, that neither "keep" nor "maintained" was defined in the state's "crack-house" statute, Alas Stat 11.71.040(a)(5). *Id.* at 674. Analyzing whether the statute proscribed the defendant's conduct, the court found that for a person to "keep" or "maintain" a structure in violation of the statute, the person must have control or have authority to control the use or occupancy of the building. *Id.* at 676.

> This statutory goal necessarily presupposes that, for a person to "keep" or "maintain" a structure in violation of the crack-house statute, the person must control or have authority to control the use or occupancy of the structure. [*Id.*]

The *Dawson* court also referred to *Meeks v Oklahoma*, 872 P2d 936, 939 (Okla Crim App, 1994), where the Oklahoma Court of Criminal Appeals adopted an instruction defining "keeping or maintaining" as used in the Oklahoma crack-house statute to require "that the defendant have control, ownership, or management of the residence, structure, or vehicle, *as distinguished from other persons resorting to it to buy or use controlled dangerous substances* in violation of this act." *Dawson, supra* at 677, citing *Meeks, supra.*[6]

---

[6] Ultimately, the *Dawson* court reversed the defendant's convictions of maintaining a crack house because each of the five separate violations of the statute did not constitute a "continuing offense" and because full and accurate instructions regarding the elements of the offense were not given at trial. *Dawson, supra* at 679. The court did not, however, recite the text of the instructions presented to the jury. It did, nevertheless, summarize the elements of the offense of maintaining a crack house as follows:

In *State v Thorpe*, 94 NC App 270, 274; 380 SE2d 777 (1989), rev'd on other grounds 326 NC 451; 390 SE2d 311 (1990), the North Carolina Court of Appeals held that the defendant had sufficient control over the premises to satisfy the "keep and maintain" element of the state's drug house statute, NC Gen Stat 90-108(a)(7),[7] which is nearly identical with MCL 333.7405(d); MSA 14.15(7405)(d), where the court found that the defendant knew drugs were being sold on the premises of his wife's bar and he directed people to speak with the gentleman behind the bar in order to purchase their drugs.

The North Carolina Court of Appeals also found in *State v Kelly*, 120 NC App 821, 826; 463 SE2d 812 (1995), that because (a) the defendant possessed a key to the premises where scales, baking soda, and

---

To summarize, we conclude that, to establish a violation of AS 11.71.040(a)(5), the state must prove that the accused, *while knowingly controlling or knowingly having authority to control property* of the type listed in the statute, personally used the property or knowingly permitted another person to use it for the purpose of keeping or distributing prohibited controlled substances in a manner that amounts to a felony under Alaska law. The state need not prove that the property was used for the exclusive purpose of keeping or distributing controlled substances, but such use must be a substantial purpose of the users of the property, and the use must be continuous to some degree; incidental use of the property for keeping or distributing drugs or a single, isolated occurrence of drug-related activity will not suffice. The purpose with which a person uses property and whether such use is continuous are issues of fact to be decided on the totality of the evidence in each case; the state is not required to prove more than a single specific incident involving the keeping or distribution of drugs if other evidence of continuity exists. [*Id.* at 678-679 (emphasis added).]

[7] NC Gen Stat 90-108(a)(7) makes it unlawful for any person "[t]o knowingly keep or maintain any store, shop, warehouse . . . which is resorted to by persons using controlled substances in violation of this Article for the purpose of using such substances, or which is used for the keeping or selling of the same in violation of this Article. . . ."

cocaine paraphernalia were found, (b) police found in the building a letter from an insurance company addressed to the defendant at the same premises, and (c) the defendant told an agent of the state and the police that he lived at the premises, "a reasonable person could infer from the evidence that defendant was in control of and maintained the residence for drug activities." Earlier, in *State v Alston*, 91 NC App 707, 711; 373 SE2d 306 (1988), the same court found that "[d]efendant's payment of rent and possession of the key to the padlock support the inference that he maintained the building, and the evidence that defendant did not actually reside there permits the inference that he maintained it for an illegal purpose."

In *State v Martinez*, 210 Wis 2d 396, 403, n 4; 563 NW2d 922 (1997), the defendant was convicted of, inter alia, maintaining a drug house, Wis Stat Ann 161.42,[8] after police executed a search warrant on the premises occupied by the defendant, his brother, his sister-in-law, and other family members, and where police found marijuana and other controlled substances. The defendant argued that he deserved a new trial because "the trial court erroneously failed to instruct the jury that proof of 'dominion and control' over the premises is required for a conviction under § 161.42." *Martinez, supra* at 402. The court observed that the jury was properly instructed with the jury instruction, so that there was no error in not

---

[8] Wis Stat Ann 161.42, the statute under which the defendant in *Martinez, supra,* was convicted is now found at Wis Stat Ann 961.42, in accordance with 1995 Wis Act 448.

including "management or control" language in the instruction.[9]

---

[9] Wis JI-Criminal 6037A, entitled "Keeping or maintaining a place resorted to by persons using controlled substances in violation of Chapter 961 for the purpose of using controlled substances—§ 961.42" states in pertinent part:

> Section 961.42 of the Wisconsin Statutes provides that it is unlawful for any person knowingly to keep or maintain any structure or place which is resorted to by persons using controlled substances in violation of Chapter 961 for the purpose of using controlled substances.
>
> Before you may find the defendant guilty of this offense, the State must prove by evidence which satisfies you beyond a reasonable doubt that the following three elements were present.
>
> The first element requires that the defendant kept or maintained a structure or place.
>
> *To keep or maintain a place is to exercise management or control over the place. This element does not require that the defendant owned* (name of place) *but it does require that the defendant maintained management or control of the place in question.*
>
> The second element requires that the place was resorted to by persons using controlled substances in violation of Chapter 961 for the purpose of using controlled substances.
>
> *(Name substance)* is a controlled substance, the use of which violates Chapter 961. [Emphasis added.]

Wis JI-Criminal 6037B, entitled "Keeping or maintaining a place used for manufacturing, keeping, or delivering controlled substances—§ 961.42," states:

> Section 961.42 of the Wisconsin Statutes provides that it is unlawful for any person knowingly to keep or maintain any structure or place which is used for manufacturing, keeping, or delivering controlled substances.
>
> Before you may find the defendant guilty of this offense, the State must prove by evidence which satisfies you beyond a reasonable doubt that the following three elements were present.
>
> The first element requires that the defendant kept or maintained a structure or place.
>
> *To keep or maintain a place is to exercise management or control over the place. This element does not require that the defendant owned (name of place),* but it does require that the defendant maintained management or control of the place in question.
>
> The second element requires that the place was used for (manufacturing) (keeping) (delivering) *(name controlled substance).*

In summary, the overriding theme of these cases is that a person may be deemed to keep and maintain a drug house if that person has the ability to exercise control or management over the house. We agree that the concepts of control and management are fair interpretations of the plain meaning of "keep and maintain," but at the same time we recognize that not all persons who have some control over a property necessarily fall within the ambit of that meaning. In the case at bar, defendant paid rent to Mitchell and lived there for over a month before the TNT raid. Defendant admitted that he knew drug deals were occurring in the house. Drug paraphernalia and a sawed-off shotgun were located within the room where the TNT team found defendant and Mitchell. Finally, a summons and complaint for defendant was found in the house and showed the Eighth Street address as his. These facts support the inference that defendant had some control over the first floor of the residence, where his bedroom was located. See, generally, *Alston, supra; Meeks, supra.*

---

["Manufacturing" means the production, preparation, propagation, or processing of a controlled substance.]

["Keeping" requires that controlled substances be kept for the purpose of warehousing or storage for ultimate manufacture or delivery. It requires more than simple possession.]

["Deliver" means to transfer or attempt to transfer something from one person to another.]

The third element requires that the defendant kept such a place knowingly. "Knowingly" requires that the defendant knew that the place was used for the (manufacture) (keeping) (delivery) of *(name controlled substance)*.

If you are satisfied beyond a reasonable doubt that the defendant knowingly maintained any structure used for (manufacturing) (keeping) (delivery) of *(name controlled substance)*, you should find the defendant guilty.

If you are not so satisfied, you must find the defendant not guilty. [Emphasis added.]

In light of defendant's rental obligations to Mitchell, it is difficult to comprehend how defendant could deny that he had any control over his own bedroom. If we permit defendant to avoid responsibility for keeping and maintaining a drug house simply because the drug transactions allegedly took place out of his sight and behind closed doors, yet in the house where he lived, we would effectively gut the Legislature's attempt to curb the sale of controlled substances from homes within our neighborhoods. Defendant provides no authority for this position, and we can find no rationale to support it.

Defendant disagrees, however, with the trial court's instruction to the jury because the court refused to tell the jury that "keep or maintain" required "general *supervisory* control" rather than merely control or "general control." Over defendant's objection, the trial court instructed the jury as follows with regard to the keeping and maintaining a drug house charge:

> To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt: (A) That the defendant kept or maintained a dwelling or building; (B) that the building kept and maintained by the defendant was used for keeping, selling or using controlled substances; (C) that the defendant knew that the building was used for keeping or selling controlled substances; and (D) that the defendant had some *general control* over the dwelling or building. [Emphasis added.][10]

---

[10] Notably, the trial court herein immediately went on to instruct the jury:

> Now, in this case the defendant is charged with the offense of keeping or maintaining a drug house *or assisting someone else in keeping it.* Anyone who intentionally assists someone else in committing a crime is as guilty as the person who directly commits it

We believe that the trial court's use of the term "general control" comports with the common interpretations and dictionary definitions for the terms "keep and maintain" because those definitions do not require or mandate "supervision." It is also supported generally by the case law from other jurisdictions interpreting the same statutory language. Thus, we find no error in the instructions that the trial court fashioned.

Moreover, defendant's reliance on *People v Hoek*, 169 Mich 87; 134 NW 1031 (1912), for the assertion that the phrase "general *supervisory* control" should have been included in the instruction, is misplaced. The Michigan Supreme Court used the term "supervisory" there to describe how the defendant managed rental property, i.e., a twelve-room building housing women of questionable repute. "He carried a key to this building, and looked after it and conducted its affairs, managing it in a *general supervisory* way." Id. at 88. The Court went on, however, to note that the defendant's actions in keeping the keys to the building, paying the rent, and hiring people to clean it evidenced that he "had general control" of the property. *Id.* We therefore find nothing in either the language of the statute at issue or case law that would require us

---

and can be convicted of that crime as an aider and an abettor." [Emphasis added.]

The court also gave the jury an aiding and abetting instruction. Given that the jury verdict form only asked whether defendant was "Not Guilty" or "Guilty of keeping or maintaining a drug house," it is possible that the jury determined that defendant *assisted* Mitchell in keeping and maintaining, i.e., managing or controlling the house. Indeed, the fact that defendant could be found guilty for assisting in the management or control of the house cuts against defendant's assertion that defendant himself had to exercise "general supervisory control" over the house.

to read a supervisory requirement into the terms "keep or maintain."

Accordingly, we find no error.

II

Defendant further argues that the trial court erred in instructing the jury that the prosecution satisfied the requisite proof of "control" when it told the jury that it could infer control if it found that defendant paid rent. We disagree.

This Court reviews jury instructions as a whole to determine whether there is error requiring reversal. Again, as we observed in *Piper, supra* at 648, the instructions must include all the elements of the charged offense and must not omit material issues, defenses, and theories if the evidence supports them. Even if imperfect, instructions do not create error if they fairly present to the jury the issues for trial and sufficiently protect the defendant's rights, *id.,* because a conviction shall not be reversed where the error is harmless, MCL 769.26; MSA 28.1096; *Hall, supra* at 603-604.

In the case at bar, the jurors requested clarification of element D of the jury instructions, specifically, the term "some general control." At the prosecution's suggestion and over defendant's objection, the trial court instructed the jury that it could "infer" general control from evidence that defendant made rent payments: "And I'm going to instruct you that if you find from the evidence that there was payment of rent by the defendant, you may infer general control That's all I can tell you." When the jury returned a second time to receive the deadlocked-jury instruction, the court responded to a juror's request that it clarify "may

infer" in the previous instruction. In response, the court stated:

> I've indicated earlier that if you find from the evidence that the defendant paid rent, then from that fact you may infer that he had some general control. By infer I mean you may impute or you may conclude. It's a decision you can make, but from that evidence that if you find from the evidence that he paid rent, then you are free to conclude that by virtue of paying rent he had some general control. That's why people pay rent is to have some general control.

Defendant again objected to this additional instruction.

We believe that as in the previously discussed cases from other jurisdictions, the payment of rent for the building where controlled substances were kept, sold, or used was indicative of control. Indeed, the last sentence of this additional instruction was superfluous. The court apparently gave it in an attempt to explain how and why the inference could be made. Reading the instructions as a whole, however, does not convince us that the final eleven words of this instruction resulted in a miscarriage of justice. *Hall, supra.* Rather, the jury was instructed with respect to the four elements that must be proved to establish keeping or maintaining a drug house, they were twice instructed with regard to the definition of the term "general control," and they were given clarification with respect to when the jury could infer general control. See, generally, *People v Shepherd*, 63 Mich App 316, 321-322; 234 NW2d 502 (1975). Never did the court tell the jury that they *must* infer general control if they found that defendant paid rent to stay at the Eighth Street residence, because this would likely invade the province of the jury. Cf. *Gaydosh, supra* at

236-237. We do not believe that the trial court's instructions invaded the province of the jury or left the jury with no other alternative but to convict defendant. Cf. *People v Edwards*, 206 Mich App 694, 696-697; 522 NW2d 727 (1994).[11] Thus, even though the trial court might better have refrained from making its final comment to the jury, we believe that the instructions still fairly presented the issue to the jury and sufficiently protected defendant's rights. *Piper, supra.*

III

Third, defendant argues that the trial court erred in instructing the jury with regard to aiding and abetting because the prosecution never presented evidence that a person other than defendant kept or maintained a drug house. Upon review de novo, we find no error. *Hubbard, supra* at 487.

The jury may be instructed about aiding and abetting where there is evidence that (1) more than one person was involved in committing a crime, and (2) the defendant's role in the crime may have been less than direct participation in the wrongdoing. *People v Head*, 211 Mich App 205, 211; 535 NW2d 563 (1995) (court properly instructed with regard to aiding and abetting where the defendant theorized that the narcotics belonged to his girlfriend or another party but the evidence supported the prosecution's argument that defendant assisted that person by storing the

---

[11] In *Edwards, supra*, when instructing regarding the "reckless act" element of second-degree child abuse, MCL 750.136b(3); MSA 28.331(2)(3), the trial court told the jury that "it was reckless to leave a bucket of hot water on the floor in the presence of children." The trial court in the instant case did not so overstep its boundaries or invade the jury's decision-making process.

drugs). Here, the prosecution presented evidence that defendant and Mitchell shared a bedroom located near the front door, that the bedroom had a large picture window facing the street and an entrance to the residence, that police found drug paraphernalia, a triple-beam scale, and a sawed-off shotgun in that bedroom, and that police found on another resident of the house prerecorded money used to conduct a controlled purchase of contraband. Given this testimony, as well as evidence that Mitchell was involved in controlled purchases and sales of contraband and defendant's admission to police that he had paid rent to Mitchell, we find that the prosecution presented sufficient evidence that more than one person was involved in keeping and maintaining a drug house and that defendant's role may have been less than direct participation in the wrongdoing. Accordingly, the trial court did not err in instructing the jury regarding aiding and abetting. *Id.*

IV

Fourth, defendant argues that the trial court erred in permitting a police officer to present hearsay testimony regarding defendant's occupancy of the residence. Specifically, defendant objected to the prosecution's questioning of Officer Dean Pratt regarding whether he learned that defendant was in bed at the time the police executed the search warrant. We review the admission of evidence for an abuse of discretion, *People v Sawyer*, 222 Mich App 1, 5; 564 NW2d 62 (1997), but even if we find that evidence was erroneously admitted, we will deem the error harmless if it did not prejudice the defendant, *People*

*v Rodriquez (On Remand)*, 216 Mich App 329, 332; 549 NW2d 359 (1996).

Although we find that the trial court erred in admitting into evidence hearsay testimony that did not fall within one of the recognized exceptions, the error was harmless. *Id.*

Hearsay is a "statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c); *People v Fisher*, 220 Mich App 133, 152; 559 NW2d 318 (1996). Here, the prosecutor asked Officer Pratt whether he learned that defendant had been in bed when the TNT squad executed the search warrant. Over objections, the court permitted Pratt to testify that he had learned from someone else that defendant was lying on a bed in the front bedroom within an arm's length of the seized triple-beam scale. A sawed-off shotgun and drug paraphernalia were also found in that bedroom. In closing, the prosecutor stressed that defendant was sleeping in the bedroom, which proved defendant's "general control" of the house and "knowledge" of the drug trafficking. Because the out-of-court statement was offered to establish the proof of the matter asserted and no hearsay exception applies, the court abused its discretion in admitting the testimony.

Nevertheless, the error was harmless because before Officer Pratt testified, Detective Turnquist testified without objection that defendant's bed was adjacent to Mitchell's, that the drug paraphernalia and scale were found in the two men's shared bedroom, and that the gun was found under the mattress in defendant's and Mitchell's bedroom. Thus, we find no prejudice because the jury heard the same informa-

tion, absent defendant's objection, from another TNT officer. *Id.*

v

Finally, defendant argues that the trial court erred in refusing to instruct the jury with CJI2d 3.9, the specific intent instruction, as an element of the crime charged. Even were we to agree with defendant, we would still find that the instructions fairly presented the issues to the jury and sufficiently protected defendant's rights. *Piper, supra* at 648.

This Court must look to the Legislature's intent to determine whether an offense constitutes a specific intent crime. *People v Gould*, 225 Mich App 79, 83; 570 NW2d 140 (1997). In giving effect to the Legislature's intent, we look to the specific language of the statute and presume that every word has meaning, and we avoid any construction that would render a statute or any part of it surplusage or nugatory. *Id.* "[T]he distinction between specific intent and general intent crimes is that the former involve a particular criminal intent beyond the act done, while the latter involve merely the intent to do the physical act." *Id.*, citing *People v Beaudin*, 417 Mich 570, 573-574; 339 NW2d 461 (1983).

The recent case of *People v Perez-DeLeon*, 224 Mich App 43, 55-56; 568 NW2d 324 (1997), addressed a similar situation and provides the following analysis:

> This Court has vacillated regarding the issue whether the existence of knowledge as an element makes a crime one of specific rather than general intent. In [*People v American Medical Centers*, 118 Mich App 135, 153; 324 NW2d 782 (1982)], we held that a prior version of the Medicaid False

Claim Act provided for a specific intent crime because it required a mental state of "knowingly." Similarly, in *People v Ainsworth*, 197 Mich App 321, 325; 495 NW2d 177 (1992), this Court held that the offense of stealing or retaining a financial transaction device was a specific intent crime, "given that knowledge is an essential element of this crime." However, in *People v Laur*, 128 Mich App 453, 455; 340 NW2d 655 (1983), and *People v Watts*, 133 Mich App 80, 82-84; 348 NW2d 39 (1984), this Court stated that, where a knowledge element is necessary to prevent innocent acts from constituting a crime, the knowledge element merely requires general criminal intent and does not make the crime one of specific intent. See also *People v Langworthy*, 416 Mich 630, 638-641; 331 NW2d 171 (1982), which discusses the difficulty of differentiating general intent crimes from specific intent ones.

As in *Perez-DeLeon*, in this case we need not resolve whether the offense at issue is a specific or general intent crime. A review of the trial testimony evidences that there was apparently no question that drugs were being sold from the residence. Consequently, much of the evidence focused on establishing that the drugs, drug paraphernalia, and weapons were so close to defendant's sleeping area that he knew that the house was being used for keeping or selling controlled substances. In addition, the jury was specifically instructed in keeping with the statute that the prosecution must prove, inter alia, that "defendant *knew* that the building was used for keeping or selling controlled substances" (emphasis added). MCL 333.7405(d); MSA 14.15(7405)(d). The jury also requested and received a copy of the jury instructions setting forth the elements of the offense. Thus, because (1) the prosecution presented significant evidence at trial relating to the "intent" issue, (2) the trial court properly instructed that the prosecution

must prove that defendant "knew" that the building was used for keeping or selling controlled substances, and (3) the jury requested and received a copy of the jury instructions, we conclude that the jury was adequately instructed regarding this element despite the fact no specific intent instruction was given. We cannot conclude that the jury could convict defendant merely because of his unwitting or inadvertent proximity to the drugs in the house.

In short, the jury could easily interpret what it meant for defendant to "know" that the residence was being used for keeping or selling controlled substances, and the instructions as a whole adequately informed the jury of the intent required to convict defendant, i.e., they fairly presented the issues to be tried and sufficiently protected defendant's rights. *Daniel, supra* at 53; *Gaydosh, supra* at 237. Consequently, we find no error requiring reversal.

We affirm.