*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 22, 2024

Plaintiff-Appellee,

v

No. 362221
Jackson Circuit Court
LC No. 19-002923-FC

ARTIS LEE HOLMES,

Defendant-Appellant.

Before: GARRETT, P.J., and LETICA and MALDONADO, JJ.

PER CURIAM.

Defendant appeals by right his jury trial conviction of assault with intent to do great bodily harm less than murder, MCL 750.84. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to serve 15 to 40 years' imprisonment. We affirm defendant's conviction but remand this case for the trial court to further articulate its reasoning for its upward-departure sentence or to resentence defendant.

## I. BACKGROUND

This case arises from a fight between defendant and Donald Cain during which Cain was repeatedly stabbed.

For years, Cain had been in a dating relationship with the mother of Brianna Sweet, and she viewed him as her stepfather and as a quasi-grandfather to her children. Sweet lived with defendant, their children, and her aunt. Sweet had two children with defendant, and on August 7, 2019, Cain had plans to take one of the children to the county fair. Unbeknownst to Cain, defendant had been feuding with Cain's brother, Ernest Eison, and Eison had sent threatening text messages to defendant. When Cain arrived to pick up the child for the county fair, Sweet told him that she did not want Cain to take the child. When defendant arrived and confirmed what Sweet said, Cain was outraged and a heated argument with defendant ensued. The pair argued in the driveway, and as defendant went into the breezeway of his house, Cain followed him and attacked him with his fists. Cain started the fight, but defendant finished it.

-1-

Defendant stabbed Cain in his arm, chest, neck, and thorax area. Cain suffered some of the stab wounds to his back as he was trying to leave the breezeway. Once outside the breezeway, Cain passed out, and while he was on the ground, defendant stomped on his face, causing Cain to suffer a broken nose and a broken eye socket. Cain was able to get into his car and drove to his brother's house, and an ambulance then took him to the hospital. Defendant was arrested the same day; he was charged with assault to commit murder, but the jury found him guilty of the lesser crime of assault with intent to do great bodily harm less than murder.

This appeal followed.

## II. ANALYSIS

## A. JURY INSTRUCTIONS

Defendant argues that he is entitled to reversal based on errors related to M Crim JI 7.16 (conditions for using force or deadly force), 7.16a (presumption of reasonable fear of death or great bodily injury), and 7.17 (use of deadly force in defense of the home). We disagree.

At the outset, we note the differences in the framing of these three arguments. With respect to M Crim JI 7.16, defendant argues that the trial court erred by reading the first paragraph of this instruction and asserts that this issue is preserved for appellate review. However, defendant acknowledges the possibility that we might deem this issue unpreserved, but he does not assert a claim of ineffective assistance arising from defense counsel's failure to properly preserve the issue; rather, he argues that the error is so egregious that it satisfies the dictates of plain error review. However, as detailed below, defense counsel expressly agreed to the instructions provided, so direct review of this instruction has been waived. With respect to M Crim JI 7.16a and 7.17, on the other hand, defendant argues that he received ineffective assistance due to defense counsel's failure to request these instructions. Accordingly, we deem the first argument waived and review the other two for ineffective assistance.

Claims of ineffective assistance of counsel present mixed questions of fact and law. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). Factual findings are reviewed for clear error and legal conclusions are reviewed de novo. *Id.* Because the trial court has not conducted an evidentiary hearing, our review is limited to mistakes that are apparent from the record. *People v Riley*, 468 Mich 135, 139; 659 NW2d 611 (2003).

The Sixth Amendment of the United States Constitution guarantees that criminal defendants receive effective assistance of counsel. *Strickland v Washington*, 466 US 668, 687-688; 104 S Ct 2052; 80 L Ed2d 674 (1984). Michigan's Constitution affords this right the same level of protection as the United States Constitution. *People v Pickens*, 446 Mich 298, 318-320; 521 NW2d 797 (1994). Accordingly, "[t]o prevail on a claim of ineffective assistance, a defendant must, at a minimum, show that (1) counsel's performance was below an objective standard of reasonableness and (2) a reasonable probability exists that the outcome of the proceeding would have been different but for trial counsel's errors." *Head*, 323 Mich App at 539 (quotation marks, citation, and alteration omitted). "[A] reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018).

This Court presumes counsel was effective, and defendant carries a heavy burden to overcome this presumption. *Head*, 323 Mich App at 539.

Questions of law involving jury instructions are reviewed de novo. *People v Gillis*, 474 Mich 105, 113;712 NW2d 419 (2006). "A criminal defendant has the right to have a properly instructed jury consider the evidence against him." *People v Rodriguez*, 463 Mich 466, 472; 620 NW2d 13 (2000) (quotation marks and citation omitted). However, even flawed instructions "do not create error if they fairly present to the jury the issues tried and sufficiently protect the defendant's rights." *People v Bartlett*, 231 Mich App 139, 143-144; 585 NW2d 341 (1998).

### 1. M CRIM JI 7.16

Defendant argues that the trial court erred by reading the first paragraph of M Crim JI 7.16, but review of this issue has been waived.

"This Court has defined 'waiver' as the intentional relinquishment or abandonment of a known right." *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011) (quotation marks and citation omitted). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *People v Buie*, 491 Mich 294, 306; 817 NW2d 33 (2012) (quotation marks and citation omitted). "Defense counsel cannot acquiesce to the court's handling of a matter at trial, only to later raise the issue as an error on appeal." *Id.* at 312 (quotation marks and citation omitted). Moreover, defendant cannot allow counsel to consent to a procedure only to object later as this would provide "a defendant with 'an appellate parachute.' " *Id*. at 313. "When defense counsel clearly expresses satisfaction with a trial court's decision, counsel's action will be deemed to constitute a waiver." *Kowalski*, 489 Mich at 503.

In the present case, defense counsel initially objected to instructing the jury that defendant had a duty to retreat to avoid using deadly force, see M Crim JI 7.16(1), and he asked the trial court to instruct the jury regarding "the rebuttable presumption regarding fear of death." However, counsel withdrew his objection regarding M Crim JI 7.16 when he told the trial court: "[W]e'll take the instruction. We'll address it with the jury." Additionally, counsel expressly agreed twice to the trial court's instructions as they were read. Under these circumstances, defendant waived any objections to erroneous instructions, and there is nothing for us to review. See *Kowalski*, 489 Mich at 504.

### 2. M CRIM JI 7.16A

Defendant argues that defense counsel rendered ineffective assistance by agreeing to jury instructions without requesting M Crim JI 7.16a. We conclude that defendant, to the extent defense counsel erred by failing to request this instruction, is not entitled to reversal because the error did not affect the outcome of the proceeding.

The relevant portion of M Crim JI 7.16a details a presumption regarding imminent death or great bodily harm:

(1) If you find both that—

(a)  the deceased was in the process of breaking and entering a business or dwelling, or committing home invasion, or had broken into a business or dwelling, or committed home invasion and was still present in the business or dwelling, or was unlawfully attempting to remove a person from a dwelling, business, or vehicle against the person's will,

and

(b) the defendant honestly and reasonably believed the deceased was engaged in any of the conduct just described

—it is presumed that the defendant had an honest and reasonable belief that imminent [death / great bodily harm] would occur.  The prosecutor can overcome this presumption by proving beyond a reasonable doubt that the defendant did not have an honest and reasonable belief that [death / great bodily harm] was imminent.

Relevant to the instant appeal, M Crim JI 7.16a would have entitled defendant to the presumption that he had an honest and reasonable belief of imminent death or great bodily injury if the jury found that Cain was in the process of, and defendant honestly and reasonably believed that Cain was in the process of, breaking and entering into defendant's home.  See M Crim JI 7.16a(1).  The prosecutor could overcome this presumption by proving beyond a reasonable doubt that defendant did not have an honest and reasonable belief that death or great bodily harm was imminent.  The jury's determination that the prosecution met its burden regarding self-defense necessarily implies that the prosecution rebutted the presumption that defendant had an honest and reasonable belief that imminent death or great bodily harm would occur from Cain's entry into his home.  Therefore, defendant cannot establish prejudice from defense counsel's agreement to jury instructions that did not contain M Crim JI 7.16a because the instructions that were given "fairly present[ed] to the jury the issues tried and sufficiently protect[ed] the defendant's rights." *Bartlett*, 231 Mich App at 143-144.

### 3.  M CRIM JI 7.17

Defendant argues that defense counsel rendered ineffective assistance by agreeing to jury instructions without requesting M Crim JI 7.17.  We again conclude that defendant, to the extent defense counsel erred by failing to request this instruction, is not entitled to reversal because the error did not affect the outcome of the proceeding.

The relevant portion of M Crim JI 7.17 describes the circumstances in which a jury may find that a defendant acted in lawful defense of the defendant's home:

(3) A person may use deadly force to defend [his / her] home where both of the following conditions exist:

(a) First, at the time [he / she] acted, the defendant must have honestly and reasonably believed that the person whom [he / she] killed or injured used force to enter the defendant's home, or was forcibly attempting to enter the defendant's

-4-

home, and had no right to enter [his / her] home. The use of any force may be sufficient, including opening a door or raising a window.

(b) Second, at the time [he / she] acted, the defendant must have honestly and reasonably believed that the person whom [he / she] killed or injured intended to steal property from the home or do bodily injury to the defendant or someone else who was lawfully in the home.

If the defendant honestly and reasonably believed that both of those conditions existed, [he / she] could act immediately to defend [his / her] home even if it turned out later that [he / she] was wrong about those conditions. In deciding if the defendant's belief was honest and reasonable, you should consider all the circumstances as they appeared to the defendant at the time.

For the same reasons as discussed above concerning M Crim JI 7.16a, defendant cannot establish prejudice from defense counsel's failure to request the jury instruction addressing the use of deadly force in defense of one's home, see M Crim JI 7.17. Justifying the use of force in defense of his home required defendant to "have honestly and reasonably believed that [Cain] intended to steal property from the home or do bodily injury to the defendant or someone else who was lawfully in the home . . . ." M Crim JI 7.17(3)(b). As already discussed, the jury's verdict indicated that the prosecution proved beyond a reasonable doubt that defendant did not honestly and reasonably believe that he was in danger of being killed or seriously injured. Therefore, even if defense counsel had requested instruction under M Crim JI 7.17, the jury's conclusion that defendant did not honestly and reasonably believe that he was in danger of being killed or seriously injured, see M Crim JI 7.17(3)(b), would have prevented the jury from finding that defendant acted in defense of his home. Therefore, we conclude that the instructions "fairly present[ed] to the jury the issues tried and sufficiently protect[ed] the defendant's rights." *Bartlett*, 231 Mich App at 143-144.

## B. RIGHT TO TESTIFY

Defendant argues that he is entitled to reversal because he was denied his right to testify at trial. We disagree.

"A defendant must raise an issue in the trial court to preserve it for [this Court's] review." *People v Heft*, 299 Mich App 69, 78; 829 NW2d 266 (2012). Although defendant initially stated on the record that he intended to testify, there is no indication that the fact that he ultimately did not testify was against his will or in deprivation of his constitutional rights. Therefore, this issue is unpreserved. This Court reviews unpreserved claims of error for plain error affecting a defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). A plain error occurs if three requirements are "met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999), reh den 461 Mich 1205 (1999) (citation omitted). Even if the three requirements are met, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial

proceedings independent of the defendant's innocence." *Id*. at 763 (quotation marks, citation, and alteration omitted).

"A defendant's right to testify in [his or her] own defense stems from the Fifth, Sixth, and Fourteenth amendments of the United States Constitution." *People v Thorne*, 322 Mich App 340, 351; 912 NW2d 560 (2017) (quotation marks and citation omitted). "Although counsel must advise a defendant of this right, the ultimate decision whether to testify at trial remains with the defendant." *People v Bonilla-Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011).

> If a defendant expresses a wish to testify at trial, the trial court must grant the request, even over counsel's objection. However, if a defendant decides not to testify or acquiesces in his attorney's decision that he not testify, the right will be deemed waived. Furthermore, there is no requirement in Michigan that there be an on-the-record waiver of a defendant's right to testify. [*People v Spaulding*, 332 Mich App 638, 656-657; 957 NW2d 843 (2020) (quotation marks, citations, and alteration omitted).]

While the jury was on a break, defense counsel examined defendant on the record about whether he intended to testify. Defendant stated that he had decided to testify, and this decision was confirmed by the trial court. However, defense counsel did not call defendant to testify, the proofs were closed, and no one said anything on the record regarding whether defendant had changed his mind or still wanted to testify. Once the jury left for the day, the trial court and the attorneys discussed the jury instructions in defendant's presence. The court stated that it would give instruction under M Crim JI 3.03 (defendant not testifying) and, again, nothing was said about defendant's earlier indication that he wanted to testify. Defendant addressed the court at sentencing without reference to his decision to testify.

Defendant has not established that he was, in fact, denied the right to testify. Given that defendant stated on the record that he wanted to testify, it certainly would have assisted appellate review to also have placed on the record that defendant changed his mind about testifying or that he acquiesced in his attorney's decision that he not testify. However, Michigan does not require an "on-the-record waiver of a defendant's right to testify." *Id*. at 657 (quotation marks, citation, and alteration omitted). Nevertheless, there was a seven-minute recess after defendant stated that he wanted to testify during which defendant could have changed his mind and defense counsel could have communicated as much to the trial court. Defense counsel called Sweet as a witness after the recess; she was on the witness stand for approximately 40 minutes, after which the defense rested. Neither the trial court, defendant, nor the prosecution commented about defendant's statement 40 minutes earlier that he intended to testify. Given these circumstances, it is neither clear nor obvious that defendant did not simply change his mind about testifying. The fact that defense counsel opted for the instruction on defendant not testifying, again without any indication from defendant to the contrary, or any comment by the prosecution, also suggests that defendant changed his mind. There is simply no record evidence indicating that the trial court or defense counsel prevented defendant from testifying or that he was not free to testify had he wanted to.

In conclusion, defendant has not established plain error arising from the fact that he did not testify in his defense.

## C. PROSECUTORIAL MISCONDUCT

Defendant argues, both through his counsel and in a Standard 4 brief, [1] that he is entitled to reversal due to prosecutorial misconduct. We disagree.

Claims of prosecutorial misconduct are preserved by making a contemporaneous objection and requesting curative jury instructions. *People v Mullins*, 322 Mich App 151, 172; 911 NW2d 201 (2017). Defendant did neither, so this issue is unpreserved. In general, claims of prosecutorial misconduct are reviewed de novo. *People v Dunigan*, 299 Mich App 579, 588; 831 NW2d 243 (2013). However, unpreserved claims of prosecutorial misconduct are reviewed for plain error. *People v Evans*, 335 Mich App 76, 88; 966 NW2d 402 (2020).

"During a criminal trial, prosecutors serve truth and justice first. The job isn't just to win, but to win fairly, staying well within the rules." *People v Urbanski*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (quotation marks and citation omitted) (Docket No. 359011); slip op at 5. "The test for prosecutorial misconduct is whether the defendant was deprived of a fair trial." *People v Orlewicz*, 293 Mich App 96, 106; 809 NW2d 194 (2011). "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements and jurors are presumed to follow their instructions." *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008) (citation omitted). Unpreserved claims of prosecutorial misconduct will not warrant reversal unless a curative instruction would have been insufficient to alleviate the harm caused by the misconduct. *Id.*

### 1. BURDEN OF PROOF

Defendant argues that the prosecution improperly implied to the jury that it was defendant's burden to prove that he acted in self-defense. We disagree.

"Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial. They are generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Unger*, 278 Mich App at 236 (citation omitted). However, it is not permissible to "imply in closing argument that the defendant must prove something or present a reasonable explanation for damaging evidence because such an argument tends to shift the burden of proof." *People v Fyda*, 288 Mich App 446, 463-464; 793 NW2d 712 (2010). That said, "otherwise improper remarks by the prosecutor might not require reversal if they respond to issues raised by the defense." *People v Callon*, 256 Mich App 312, 330; 662 NW2d 501 (2003).

The rebuttal arguments with which defendant takes exception were appropriate and direct responses to arguments made by defendant. During his closing, defense counsel read to the jury the instruction for self-defense. He told the jury that a person could use self-defense, including deadly force, against an unarmed assailant if the person believed that the assailant was going to cause death or serious injury and that belief was honest and reasonable. Counsel then said:

---

[1] A "Standard 4" brief refers to the brief a defendant may file *in propria persona* pursuant to Standard 4 of Michigan Supreme Court Administrative Order No. 2004-6, 471 Mich c, cii (2004).

We know that belief was honest and reasonable. We have the text messages. We know that belief is honest and reasonable. Mr. Cain invades into his home. We know that belief is honest and reasonable. He had avoided any physical confrontation before. We know that belief was honest and reasonable. Mr. Cain was a trained boxer. His belief was honest and reasonable. There's no question about that.

Defense counsel continued by reading to the jury other sections of the self-defense instruction and arguing that the evidence met the requirements of the instruction. Counsel stated that, "[i]n deciding if the defendant's belief was honest and reasonable," the jury had to "judge Mr. Holmes's decisions as they were happening on that day with everything that he had in his mind." He then reminded the jury of evidence that established the honesty and reasonableness of defendant's belief that he was in danger of death or great bodily harm: the threatening texts, his knowledge of Cain and his capabilities, and the fact that Cain went into the breezeway to attack defendant after defendant had retreated. Lastly, as it pertains to the self-defense instruction, defense counsel addressed the requirement that a person could only use "as much force as he thinks is necessary at the time to protect himself." Counsel argued that a person caught up in the excitement of a street fight is not thinking like a lawyer: he is not wondering if he is going to be prosecuted, if the threat has de-escalated, or whether he was sufficiently safe to stop fighting.

The prosecutor's rebuttal argument mirrored the essential structure of defense counsel's closing argument. Regarding whether defendant believed that Cain was going to cause death or serious injury, the prosecutor argued that:

> The problem is we don't have any testimony to support that. We don't have any testimony whatsoever to say what Artis Holmes' beliefs were. The only testimony we have that says anything about defense whatsoever is Brianna Sweet says, [sic] yes, when Donald Cain punched [defendant] he appeared to be defending himself and they began to fight. So to say that Artis Holmes had a reasonable belief that he was going to be killed or seriously injured, there's just no evidence whatsoever to support that.

The prosecutor argued that the testimony suggested that defendant was threatened with only minor injury from a fist fight. The prosecutor further argued that, even if the jury concluded that defendant honestly and reasonably believed that he was in danger of death or serious injury from Cain, that danger dissipated when Cain realized that defendant was stabbing him and began to leave. At that point, there was no reason to continue to stab Cain or to follow him outside and stomp on his face multiple times while he was lying on the ground. The prosecutor argued that defendant did that out of anger, not out of any sense that he was in danger of death or serious bodily injury.

The structure of the prosecutor's rebuttal argument showed that he was responding directly to defense counsel's repeatedly pointing to evidence that counsel asserted illustrated defendant's honest and reasonable belief that he was in danger of death or serious bodily injury from Cain. The prosecution had the burden to prove beyond a reasonable doubt that defendant did not honestly and reasonably believe that he was at danger of death or serious bodily injury, and the prosecutor's comment reminded the jury that none of the witnesses had testified about what defendant believed

regarding Cain and his intentions. Even if the prosecution's comment would have been improper during the prosecution's closing argument, it arguably was a fitting response to defense counsel's urging the jury to find that the evidence showed that defendant believed that he was at risk of death or serious injury and that this belief was honest and reasonable. Arguing that defense counsel made statements lacking evidentiary support is not the same as arguing that defendant had the burden to produce evidence proving his innocence.

Further, the trial court's instructions to the jury directly addressed the concerns defendant raises on appeal. After the conclusion of closing arguments, the court instructed the jury that defendant had the absolute right not to testify; that the jury could not allow defendant's exercise of that right to affect its verdict; and that defendant did not have to prove that he acted in self-defense, but the prosecutor had to prove beyond a reasonable doubt that defendant did not act in lawful self-defense. Moreover, the trial court instructed the jury, "It's my duty to instruct you on the law. You must take the law as I give it to you. If a lawyer has said something different about the law follow what I say." "Jurors are presumed to follow their instructions . . . ." *People v Abraham*, 256 Mich App 265, 279; NW2d 836 (2003). Therefore, defendant has not shown that he is entitled to relief based on the challenged comments.

## 2. FALSE EVIDENCE

In his Standard 4 brief, defendant argues that the prosecution knowingly used false testimony to obtain defendant's conviction. We disagree.

Defendant first contends that the prosecutor used leading questions to elicit Cain's testimony that the fight between him and defendant began outside instead of in the breezeway. "It is well settled that a conviction obtained through the knowing use of perjured testimony offends a defendant's due process protections guaranteed under the Fourteenth Amendment." *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009). However, the presentation of conflicting testimony does not run afoul of these guarantees if "there is no evidence that the prosecutor attempted to conceal these contradictions," and it is permissible to present testimony contradicted by prior statements made to the police if "there is no evidence that the prosecutor attempted to keep the contents of those previous statements from defendant." *People v Parker*, 230 Mich App 677, 690; 584 NW2d 753 (1998). The record in the present case shows that the prosecutor did not ask Cain leading questions to elicit his account of where the fight began, that the jury heard testimony from a sheriff's deputy indicating that Cain told him that the fight started in the breezeway, and that the prosecutor acknowledged during his closing argument that there existed conflicting testimony about where the fight started. The prosecutor did not conceal the contradictions regarding where the fight started from either the jury or defendant, see *Id.*, and it was for the fact-finder to decide which version of events to believe, see *People v Canter*, 197 Mich App 550, 565; 496 NW2d 336 (1992).

Defendant next contends that the prosecutor elicited false testimony from Cain that he went to defendant's house for the sole purpose of picking up the child and taking him to the fair. In support of this claim, defendant points to statements in a deputy sheriff's incident report indicating that defendant told Cain that he could not pick up the child and take him to the fair, but Cain went to the house to pick up the child anyway. Although the incident report indicates that Cain may have known that defendant did not want him to take the child to the fair before Cain went to

defendant's house, it does not show that Cain went to defendant's house for reasons other than to pick up the child. Therefore, defendant has not shown that Cain's testimony claiming he went to defendant's house to pick up the child and take him to the fair was false or that the prosecutor knew that it was false.

Lastly, defendant asserts that the prosecution incorrectly stated during its closing argument that Cain first learned of the threatening text messages and the dispute between defendant and Eisen on the day of the fight, when Cain's preliminary examination testimony showed that he knew about the dispute before then. Regarding Cain's knowledge of the dispute between defendant and Eisen, the prosecutor's statement was consistent with Cain's trial testimony. Even if Cain's preliminary examination testimony might have suggested that Cain knew about the dispute before the incident in question, a prosecutor may use testimony that is inconsistent with prior testimony if the prosecutor does not have knowledge that the testimony used was false and does not conceal the prior testimony. See *Parker*, 230 Mich App at 690. Moreover, no evidence was presented at the preliminary examination or at trial indicating that Cain knew about Eisen's threatening text messages.

For the foregoing reasons, we conclude that defendant has not established that the prosecutor knowingly used false testimony to secure a conviction.

## D. DEPARTURE SENTENCE

Defendant argues that he is entitled to resentencing because the trial court did not properly justify its 28-month upward-departure sentence. We agree in part.

"A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness. Resentencing will be required when a sentence is determined to be unreasonable." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015), cert den 577 US 1043 (2015) (citation omitted). "[T]he relevant question for appellate courts reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the principle of proportionality." *People v Dixon-Bey*, 321 Mich App 490, 520; 909 NW2d 458 (2017) (quotation marks and citation omitted). "[T]he principle of proportionality . . . requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Steanhouse*, 500 Mich 453, 460; 902 NW2d 327 (2017) (quotation marks and citation omitted). "The trial court's fact-finding at sentencing is reviewed for clear error." *People v Lampe*, 327 Mich App 104, 125-126; 933 NW2d 314 (2019).

The sentencing guidelines are no longer mandatory and are now advisory; however, "they remain a highly relevant consideration" and the trial courts must continue to consult them. *Lockridge*, 498 Mich at 391. It is appropriate for trial courts to depart from the sentencing ranges recommended by the guidelines "when, in their judgment, the recommended range under the guidelines is disproportionate, in either direction, to the seriousness of the crime." *People v Walden*, 319 Mich App 344, 352; 901 NW2d 142 (2017) (quotation marks and citation omitted). When deciding whether to depart from the guidelines, trial courts may consider "(1) whether the guidelines accurately reflect the seriousness of the crime, (2) factors not considered by the guidelines, and (3) factors considered by the guidelines but given inadequate weight." *Dixon-Bey*, 321 Mich App at 525 (citations omitted). "When making this determination and sentencing a

defendant, a trial court must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *Id*. at 525. A trial court's decision to depart from the guidelines should not be based on factors that are "contemplated by at least one offense variable" if the court offers "no rationale as to why that scoring was insufficient to reflect the nature of" the case's unique circumstances. *Id*. at 526-527. This Court "must evaluate whether reasons exist to depart from the sentencing guidelines and whether the *extent* of the departure can satisfy the principle of proportionality." *People v Steanhouse (On Remand)*, 322 Mich App 233, 239; 911 NW2d 253 (2017), vacated in part on other grounds 504 Mich 969 (2019). When a departure is justified, the trial court still "must explain how the extent of the departure is proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id*.

The trial court explained that it considered punishment, defendant's prospects for rehabilitation, deterrence, and the protection of society when fashioning an individualized sentence for defendant. The court observed that defendant was 37 years old and had four prior felonies, 10 prior misdemeanors, and a juvenile record. The court also recalled the medical expert's testimony regarding the viciousness of defendant's response to Cain's attack. The court further commented that most of defendant's prior convictions were assaultive in nature and were often committed while defendant was on parole or probation, and, while defendant was on bond for the sentencing offense, he "picked up" a new charge of domestic violence, third offense, that was currently pending. The sentencing court did not believe that the sentencing guidelines adequately accounted for the assaultive nature of most of defendant's prior convictions, nor for the fact that defendant appeared to be unable to conform his conduct to the requirements of his parole or probation. Therefore, the court sentenced defendant to a 28-month upward-departure sentence of 15 to 40 years' (180 to 480 months) imprisonment. The reasons provided were more than generalized, and the court noted that the guidelines did not adequately account for the nature of defendant's convictions, i.e., that fact that most of them were assaultive, nor for defendant's apparent inability to conform himself to the requirements of parole and probation, which arguably suggested a low likelihood of rehabilitation, a high likelihood that defendant would continue to be a threat to society, and a greater need to protect society. Therefore, we conclude that the court adequately justified its decision to depart from the sentencing guidelines.

However, the sentencing court did not explain why a 28-month upward-departure sentence was "more proportionate to the offense and the offender than a different sentence would have been." See *People v Smith*, 482 Mich 292, 311; 754 NW2d 284 (2008). It is not necessary for courts to "sentence defendants with mathematical certainty. Nor are any precise words necessary for them to justify a particular departure." *Id*. Nevertheless, we review the reasons the trial court articulated for departure, which "includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *Id*. Articulation on the record of the trial court's rationale is necessary to ensure that defendant's sentence is proportionate to the offenses and the offender and to allow for this Court's meaningful appellate review. Because "an appellate court cannot substitute its own judgment about why the departure was justified[, a] sentence cannot be upheld when the connection between the reasons given for departure and the extent of the departure is unclear." *Id*. at 304.

Therefore, defendant's sentence cannot be affirmed without additional explanation for the trial court's belief that the sentence is proportionate.

## III. CONCLUSION

Defendant's convictions are affirmed. This case is remanded to the trial court to offer further explanation for the extent of its departure from the sentencing guidelines or, in the alternative, for resentencing. We do not retain jurisdiction.

/s/ Anica Letica
/s/ Allie Greenleaf Maldonado