# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

PERRY JUNIOR FREEMON,

        Defendant-Appellant.

UNPUBLISHED
August 15, 2017

No. 332919
Washtenaw Circuit Court
LC No. 15-000256-FC

Before: CAVANAGH, P.J., and METER and M. J. KELLY, JJ.

PER CURIAM.

Defendant, Perry Freemon, appeals as of right his convictions, after a jury trial, of assault with intent to commit murder, MCL 750.83, assault with a dangerous weapon (felonious assault), MCL 750.82, domestic violence (third offense), MCL 750.81(4), possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and felon in possession of a firearm (felon-in-possession), MCL 750.224f. Because there are no errors warranting relief, we affirm.

## I. BASIC FACTS

This case arises from the shooting of Vanessa Robuste. A few days before the shooting, Freemon left the home he shared with Robuste and their children after an argument about Robuste's alleged infidelity. Because they had broken up, Robuste asked her landlord to change the locks, and Clarence Newman, a maintenance man, came to her home to do so. Robuste was the only person at the home when Newman arrived. According to Newman, while he was changing one of the locks, he heard something behind him and turned around to see Freemon approaching him with a large silver gun in his hand. Freemon threatened Newman with the gun before going inside in search of Robuste.

Freemon found Robuste in her bedroom, pulled out the silver gun with his right hand, pointed it at her, put it in her mouth, and threatened her with it before forcing her into the kitchen. Newman testified that Robuste attempted to leave, but Freemon physically restrained her. Newman fled the home while Freemon was distracted, and Robuste testified that Freemon shoved her into a kitchen chair and "just started shooting." Robuste was shot in the leg, chest, and face.

Freemon testified on his own behalf at trial. He stated that he would have been incapable of pulling the trigger due to an existing injury to his right index finger. He testified he was at Robuste's house on the day of the shooting to check on her because he believed her house had been broken into. He testified that when he attempted to show Robuste surveillance video footage on his cellphone, Robust smacked the gun and cellphone from his hand and the gun discharged accidently. Freemon claimed that he closed his eyes in reaction to the gun going off, felt something on his hands, let go of the gun, and heard two more gunshots. According to Freemon, when he opened his eyes, he saw Robuste lying in blood, and he ran outside to get help.

## II. SUFFICIENCY OF THE EVIDENCE AND GREAT WEIGHT OF THE EVIDENCE

### A. STANDARD OF REVIEW

Freemon argues that the prosecutor presented insufficient evidence to convict him of assault with intent to commit murder and that the conviction was against the great weight of evidence. We review de novo Freemon's challenge to the sufficiency of the evidence, viewing the evidence "in a light most favorable to the prosecution to determine whether the trial court could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Sherman-Huffman*, 241 Mich App 264, 265; 615 NW2d 776 (2000). The challenge to the great-weight claim is unpreserved because Freemon did not move for a new trial in the trial court. See *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011). Unpreserved great-weight issues are reviewed for plain error affecting substantial rights. *Id*. at 618.

### B. ANALYSIS

To prove assault with intent to murder, the prosecution must show that a defendant committed: "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Warren (After Remand)*, 200 Mich App 586, 588; 504 NW2d 907 (1993). Freemon asserts that the evidence was insufficient to prove he intended to kill. "This Court has consistently observed that "[b]ecause of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient." *People v Ericksen*, 288 Mich App 192, 196-197; 793 NW2d 120 (2010) (citation and quotation marks omitted). Further, intent to kill may be proved by "the nature of the defendant's acts constituting the assault; the temper or disposition of mind with which they were apparently performed, whether the instrument and means used were naturally adapted to produce death, [the defendant's] conduct and declarations prior to, at the time, and after the assault, and all other circumstances calculated to throw light upon the intention with which the assault was made." *People v Taylor*, 422 Mich 554, 568; 375 NW2d 1 (1985) (citation and quotation marks omitted).

In this case, there was overwhelming evidence that Freemon intended to kill Robuste. Newman, who was at the house to change the locks, testified that Freemon put a gun to his head, commented that "If it wasn't [Newman], he would shoot him," and then asked where Robuste was. Upon learning that Robuste was inside, Freemon entered the home. Robuste testified that Freemon entered her bedroom, pointed a gun at her, and said that he "should shoot her right now." She recounted that he put the gun in her mouth, grabbed the collar of her shirt, and forced

her into the kitchen. In the kitchen, he shoved her into a chair and "just started shooting." He shot Robuste in the leg, chest, and face. He then fled the scene, hiding the gun before he was apprehended by the police. In challenging the sufficiency of the evidence, Freemon essentially asserts that the jury should have believed his version of events and found Newman's and Robuste's testimony less credible. However, the weight and credibility of evidence, and the inferences to be drawn from the evidence, are matters for the jury to resolve. *People v Unger*, 278 Mich App 210, 228-229; 749 NW2d 272 (2008). The prosecution therefore presented sufficient evidence to support Freemon's conviction for assault with intent to murder.

Moreover, the conviction was not against the great weight of the evidence. "The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Musser*, 259 Mich App 215, 218-219; 673 NW2d 800 (2003). Freemon suggests that his version of events should be believed and that the prosecutor's witnesses lack credibility and consistency. However, "[i]t is the province of the jury to determine questions of fact and assess the credibility of witnesses." *People v Lemmon*, 456 Mich 625, 637; 576 NW2d 129 (1998). "Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial." *Id*. at 647. Accordingly, Freemon's conviction for assault with intent to murder is not against the great weight of the evidence.

## III. SPEEDY TRIAL

### A. STANDARD OF REVIEW

Freemon also argues that his right to a speedy trial was violated. "Whether defendant was denied the right to a speedy trial is a constitutional law question that is reviewed de novo." *People v Rivera*, 301 Mich App 188, 193; 835 NW2d 464 (2013).

### B. ANALYSIS

A criminal defendant has a constitutional right to a speedy trial. *People v McLaughlin*, 258 Mich App 635, 644; 672 NW2d 860 (2003); US Const, Am VI; Const 1963, art 1, § 20; MCL 768.1; MCR 6.004(A). In determining whether a defendant has been denied the right to a speedy trial, courts apply the framework enumerated in *Barker v Wingo*, 407 US 514; 92 S Ct 2182; 33 L Ed2d 101 (1972), which considers "the following four factors: (1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *People v Williams*, 475 Mich 245, 261-262; 716 NW2d 208 (2006). A delay that of 18 months or more is presumptively prejudicial, making it incumbent upon the prosecution to demonstrate that the defendant was not, in fact, prejudiced. *Id*. at 262. "When the delay is less than 18 months, the defendant must prove that he or she suffered prejudice." *Rivera*, 301 Mich App at 193. " 'The time for judging whether the right to a speedy trial has been violated runs from the date of the defendant's arrest.' " *Id*., quoting *Williams*, 475 Mich at 261.

In this case, Freemon was arrested on February 24, 2015, and his trial began on January 11, 2016, resulting in a delay of approximately 11 months. Because the time was less than 18 months, prejudice cannot be presumed. *Rivera*, 301 Mich App at 193. Accordingly, Freemon is required to prove prejudice by the delay. *Id*. A defendant can experience prejudice from delay

in two ways: "prejudice to his person and prejudice to the defense." *Williams*, 475 Mich at 264 (citation and quotation marks omitted). Prejudice to a defendant's person "would take the form of oppressive pretrial incarceration leading to anxiety and concern." *People v Collins*, 388 Mich 680, 694; 202 NW2d 769 (1972). Prejudice to the defense, "might include key witnesses being unavailable." *Id*. "In considering the prejudice to the defendant, the most serious inquiry is whether the delay has impaired the defendant's defense." *People v Simpson*, 207 Mich App 560, 564; 526 NW2d 33 (1994). Here, Freemon concedes that his defense was not prejudiced. Moreover, although Freemon contends that he suffered prejudice to his person in the form of anxiety, we note that the majority of the delay is attributed to the withdrawal of his first trial lawyer due to a breakdown in the attorney-client relationship. Under these circumstances, Freemon has not established that the 11-month delay deprived him of his constitutional right to a speedy trial.

## IV. JURY INSTRUCTIONS

### A. STANDARD OF REVIEW

Next, Freemon argues he was denied a fair trial because the jury should have been instructed on mitigating circumstances and the accident defense. This Court considers claims of instructional error de novo. *People v Bartlett*, 231 Mich App 139, 143; 585 NW2d 341 (1998).

### B. ANALYSIS

"A criminal defendant is entitled to have a properly instructed jury consider the evidence against him." *People v Armstrong*, 305 Mich App 230, 239; 851 NW2d 856 (2014) (citation and quotation marks omitted). "[J]ury instructions must include all the elements of the charged offenses and any material issues, defenses, and theories that are supported by the evidence." *People v McKinney*, 258 Mich App 157, 162-163; 670 NW2d 254 (2003). "When a defendant requests a jury instruction on a theory or defense that is supported by the evidence, the trial court must give the instruction." *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002). "This Court reviews jury instructions as a whole to determine whether there is error requiring reversal." *Bartlett*, 231 Mich App at 143. Jury instructions do not qualify as erroneous if they fairly present to the jury the issues to be tried and sufficiently protect the defendant's rights. *People v Knapp*, 244 Mich App 361, 376; 624 NW2d 227 (2001).

Freemon requested the mitigating circumstance jury instruction, which instructs the jury that "[i]f the assault took place under circumstances that would have reduced the charge to manslaughter if the person had died, the defendant is not guilty of assault with intent to commit murder." CJI2d 17.4. Manslaughter requires proof of such provocation that a reasonable person would lose control and proof that there was insufficient time for a reasonable person to regain that control. *People v Hawthorne*, 265 Mich App 47, 58; 692 NW2d 879 (2005), rev'd on other grounds 474 Mich 174 (2006). At trial, the prosecution alluded to discord in Robuste's and Freemon's relationship and presented testimony regarding the allegations of Robuste's infidelity and prior instances of domestic violence. However, there was no evidence that Freemon assaulted Robuste in the heat of passion. Instead, Freemon denied shooting Robuste intentionally and asserted that he only fired one shot by accident. Consequently, the requested

instruction was not supported by the testimony, and the trial court did not err in refusing to give it.

With regard to the accident instruction, Freemon's lawyer never requested it. Moreover, he expressed satisfaction with the jury instructions as they were given, so Freemon's argument related to the accident instruction is waived. See *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000). In addition, despite the fact that the accident instruction was not read, the jury could have still concluded that, based on Freemon's testimony, he did not intend to murder Robuste and so was not guilty of assault with intent to commit murder. Therefore, even if an accident instruction could or should have been given, the issues to be tried were fairly presented to the jury by the instructions that were actually given, thereby protecting Freemon's rights. See *Knapp*, 244 Mich App at 376.

## V. INEFFECTIVE ASSISTANCE

### A. STANDARD OF REVIEW

Finally, Freemon argues that he was denied the effective assistance of counsel for several reasons. "When no *Ginther*[1] hearing has been conducted, our review of the defendant's claim of ineffective assistance of counsel is limited to mistakes that are apparent on the record." *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005).

### B. ANALYSIS

To establish that his lawyer provided ineffective assistance, a defendant must show: (1) that his lawyer's performance was below an objective standard of reasonableness under prevailing professional norms, and (2) that there is a reasonable probability that, but for his lawyer's deficient performance, the result of the proceedings would have been different. *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 US at 694. Effective assistance is presumed, and the defendant bears a substantial burden of proving otherwise. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). The strategic judgments of a defendant's lawyer are afforded deference, *Wiggins v Smith*, 539 US 510, 521-522, 528; 123 S Ct 2527; 156 L Ed 2d 471 (2003), but strategic choices made after an incomplete investigation are reasonable only to the extent that reasonable professional judgments support the limitation on investigation, *Trakhtenberg*, 493 Mich at 52-53.

Freemon argues that his lawyer failed to move for a directed verdict on his assault with intent to commit murder charge. A motion for a directed verdict is reviewed in the same manner as a challenge to the sufficiency of the evidence. *People v Schultz*, 246 Mich App 695, 702; 635 NW2d 491 (2001). As discussed above, the evidence presented at trial was sufficient to support

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Freemon's conviction of assault with intent to commit murder. Accordingly, Freemon's lawyer was not ineffective for failing to move for a directed verdict.

Freemon next argues that his lawyer was ineffective because he failed to properly investigate the case. The failure to reasonably investigate a case can constitute ineffective assistance. *People v McGhee*, 268 Mich App 600, 626; 709 NW2d 595 (2005). However, although Freemon claims that his lawyer failed to investigate, he does not explain or rationalize the merits of this argument or cite authority in support of his claim. Therefore, Freemon has abandoned this claim. See *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority.").

Freemon contends that his lawyer was ineffective because he failed to call Freemon's hand surgeon to testify regarding Freemon's injured hand. Decisions regarding whether to call or question witnesses are presumed to be matters of trial strategy. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). "[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004).

On the first day of trial, Freemon's lawyer asked the trial court for an adjournment because Freemon had just brought two potential witnesses to his attention. Freemon informed his lawyer that his nurse and his hand surgeon could testify that the condition of his injured hand rendered him incapable of firing a gun. Freemon asserted that their testimony would impeach the testimony of Robuste and Newman. The trial court denied the request for an adjournment, but indicated that Freemon's lawyer could present the nurse and the surgeon as witnesses. While the surgeon did not testify, the nurse testified that Freemon had sutures on his right hand, was receiving IV antibiotics for his injury, and might have had some difficulty opening and closing his right index finger. Thus, the record demonstrates that Freemon's lawyer was aware of the witnesses and the general scope of their testimony. Accordingly, this is not an instance in which a lawyer failed to investigate the possibility of a potentially exculpatory witness that deprived the defendant of a substantial defense. Instead, the decision to present the nurse as a witness, rather than the surgeon, was the result of professional judgment. While Freemon's lawyer arguably could have presented the surgeon to buttress the testimony that indicated Freemon's hand was incapable of shooting a gun, the failure to do so did not render his performance below an objective standard of reasonableness. And given that the hand surgeon's testimony would, presumably, be cumulative to Freemon's and the nurse's testimony, Freemon cannot establish that the failure to call the surgeon as a witness was prejudicial, i.e., outcome determinative.

Freemon next asserts that his lawyer was ineffective because he failed to request the accident instruction. Even assuming that the failure to request this instruction fell below an objective standard of reasonableness, Freemon has not demonstrated the requisite prejudice necessary to establish a claim of ineffective assistance. The jury was instructed that it could not convict Freemon of assault with intent to commit murder if the prosecution did not prove that Freemon intended to kill Robuste. The trial court also instructed the jury that the prosecutor had to prove each element of the crime beyond a reasonable doubt. If the jury had believed Freemon's testimony that he fired the first shot by accident, it could have found him not guilty of

assault with intent to commit murder.[2]  Because the jury found that Freemon had the requisite specific intent, it is apparent that the jury rejected Freemon's theory of an accidental shooting. Accordingly, the failure to request the accident instruction did not constitute ineffective assistance.

Freemon also asserts that his lawyer "could not hear parts of the proceeding."  During trial, Freemon's lawyer indicated that he had trouble hearing on at least one occasion.  However, there is nothing in the record to suggest that Freemon's lawyer missed any part of the proceedings due to a hearing problem.  In fact, the record indicates that Freemon's lawyer fully participated in the trial and cross-examined each witness extensively in a manner that indicates he heard the full direct examination.  Moreover, Freemon does not argue that his lawyer's alleged hearing difficulty made the result of the proceeding any different than it would have been otherwise.  Thus, Freemon has not demonstrated that he received ineffective assistance from his lawyer based on his lawyer's alleged inability to hear the proceedings.

Freemon next contends that his lawyer was ineffective because he made arguments contrary to Freemon's testimony and stated in his closing argument that Freemon's testimony was not believable.  Specifically, during the closing argument, Freemon's lawyer argued:

There were three shots fired.  Bullets all over the kitchen.  That would tend to indicate a struggle.  Both [Freemon] and Miss Robuste deny a struggle took place and I'm not arguing that . . . the gun had a mind of its own and fired itself, but somebody fired that gun and somebody fired bullets all over the scene.

\* \* \*

[Robuste] says she never touched the gun.  [Freemon] says she snatched it out of his injured hand or whatever.  I'm going to ask you folks to exercise a little bit of judgment back in the jury room.  Do either one of those stories make sense to you?  I would argue that perhaps what makes more sense is that the gun went off, she was hit in the leg.  That there was then a struggle between two people for the gun and a number of shots were fired and that's why those bullets were found all over that room.  Not because he intended to shoot her, not because she was suicidal and became suddenly despondent, but the physical evidence is consistent with a fight over a gun and the gun going off as a result of that fight.

\* \* \*

Maybe [Freemon] only intended to wound her in the leg and something else happened in which case it would be assault with intent to do great bodily harm. Maybe he didn't intend to do anything at all but scare her with a gun in which case its felonious assault, but you have to look at the real evidence and you have

---

[2] Freemon only asserted that he fired the first shot by accident.  He did not know how the other two shots were fired.

to realize that the story [Freemon] told doesn't make any more sense than the story [Robuste] told. It doesn't make any less sense either.

Based on our review, we conclude that faced with contradictory testimony, Freemon's lawyer apparently made the strategic decision to acknowledge the improbability of Freemon's version of events. Freemon had testified that the gun went off accidently when Robuste "smacked the cell phone and the gun" in his hands when he was trying to show her a video, that he closed his eyes in reaction to the gun going off, that he felt something on his hands so let go of the gun, and that he heard two more gunshots. In allowing that this account was not very plausible, Freemon's lawyer could have reasonably believed that this decision would strengthen Freemon's credibility, and thus his ability to argue to the jury that the prosecution had not proved Freemon's guilt beyond a reasonable doubt. It also provided leeway for Freemon's lawyer to argue that there was another explanation. If both Freemon and Robuste had lied about how the shooting occurred, then the resolution of the case arguably rested on the issue of what the physical evidence suggested occurred. The fact that Freemon's lawyer's strategy did not work does not mean that he provided ineffective assistance. See *People v Stewart (On Remand)*, 219 Mich App 38, 42; 555 NW2d 715 (1996).

Further, Freemon has not demonstrated the requisite prejudice necessary to establish his claim that his lawyer provided ineffective assistance. At trial, the prosecutor offered the testimony of Robuste to establish that Freemon drew a gun on her, said "he should shoot her right now," put the gun in her mouth, grabbed the collar of her shirt, forced her into the kitchen, physically restrained her when she attempted to leave the house, and shot her three times in the leg, chest, and face. Both Newman's testimony and the physical evidence corroborated Robuste's version of events and even Freemon initially admitted to the police that he caused Robuste's injuries. In addition, the prosecutor presented evidence that Freemon committed prior acts of domestic violence against Robuste and had fled the scene after the shooting. Thus, in light of this overwhelming evidence of defendant's guilt, there is no reasonable probability that, but for Freemon's lawyer's closing argument, the result of the trial would have been different.

Finally, Freemon argues that he was denied the effective assistance when his lawyer failed to consult with or retain an expert in bullet trajectory who could have testified that "it was impossible for [Freemon] to fire the gun at [Robuste]." Here, there is no indication that Freemon's lawyer failed to consult with an expert or made his decision not to retain such an expert before deciding on a trial strategy. Freemon has not provided any evidence that an expert in bullet trajectory would have supported his theory. Thus, Freemon has merely speculated that a bullet trajectory expert would have provided favorable testimony to his defense, so he has failed to show that the retention of a bullet trajectory expert would have altered the outcome of his trial.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Patrick M. Meter
/s/ Michael J. Kelly