*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

THERESA MARIE GAFKEN,

      Defendant-Appellant.

UNPUBLISHED
June 18, 2020

No. 345954
St. Clair Circuit Court
LC No. 18-001241-FC

Before: MURRAY, C.J., and JANSEN and MARKEY, JJ.

PER CURIAM.

Defendant appeals by right her jury trial conviction of second-degree murder, MCL 750.317, for which the trial court sentenced her to 20 to 30 years in prison. We affirm.

## I. FACTS AND PROCEEDINGS

Defendant caused a fatal accident in Port Huron on the morning of April 11, 2018. Defendant was driving a Chevrolet Camaro with Michael Scandalito and two other passengers. A police officer observed defendant driving approximately 50 miles per hour in a zone with a posted speed limit of 25 miles per hour. He signaled for her to stop. Rather than stopping, defendant turned left at a stop sign, increased her speed to above 90 miles per hour, and passed other vehicles while traveling in a left-turn-only lane. She disregarded a red traffic light at an intersection and struck three vehicles: a Ford F-150 pickup truck, a Mazda, and a Jeep Compass driven by Kristine Donahue. Evidence indicated that defendant was traveling in excess of 100 miles per hour when she struck the Jeep, which overturned, killing Donahue instantly.

Defendant told the police officer and hospital emergency room personnel that she fled from the officer under duress because her passengers threatened to kill her if she stopped. The prosecutor charged defendant with second-degree murder and two counts of operating a vehicle while under the influence of THC causing serious impairment of a body function, MCL 257.625(5). Defendant sought to present a defense theory that she suffered from post-traumatic stress disorder (PTSD) caused by sexual abuse when she was between the ages of 7 and 14, which molestation involved her abuser threatening to kill her if she disclosed the abuse. And, as part of this defense theory, when passenger Scandalito threatened to kill defendant if she stopped, his

-1-

threats triggered memories of the abuse, which, in turn, caused her to "dissociate" or lose awareness of her surroundings. She was then unable to control her actions. Defendant did not pursue an insanity defense, MCL 768.20a.

Before trial, the court ruled that relative to the homicide charge, defendant would not be permitted to testify at trial about Scandalito's threat, the past sexual abuse, and her mental state before the collision. The trial court also denied defendant's motion for appointment of an expert witness with regard to defendant's proposed defense theory. Before trial, the prosecutor dismissed the two charges under MCL 257.625(5). The trial court instructed the jury on second-degree murder and the lesser offense of involuntary manslaughter, MCL 750.321. The jury found defendant guilty of second-degree murder. The trial court sentenced defendant to 20 to 30 years' imprisonment, which was within defendant's minimum sentence guidelines range of 180 to 300 months.

## II. DEFENDANT'S PTSD DEFENSE – DURESS AND DIMINISHED CAPACITY

Defendant argues that the trial court's rulings precluding her from testifying about her PTSD history and the effect that it had on her mental state when she was threatened by Scandalito shortly before the accident violated her constitutional right to present a defense. She similarly argues that the trial court's denial of her motion for appointment of an expert in relation to that defense violated her right to due process.

We review for an abuse of discretion a trial court's decision to admit or exclude evidence. *People v Steele*, 283 Mich App 472, 478; 769 NW2d 256 (2009). "However, decisions regarding the admission of evidence frequently involve preliminary questions of law, e.g., whether a rule of evidence or statute precludes admissibility of the evidence," and we review "questions of law de novo." *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). The issue whether defendant was deprived of her constitutional right to present a defense is reviewed de novo. *People v Bosca*, 310 Mich App 1, 47; 871 NW2d 307 (2015). We review for an abuse of discretion a trial court's decision to deny an indigent defendant's motion for appointment of an expert witness. *People v Carnicom*, 272 Mich App 614, 616; 727 NW2d 399 (2006). An abuse of discretion occurs when the trial court's decision results in an outcome falling outside the range of reasonable and principled outcomes. *Id*. at 616-617.

"Few rights are more fundamental than that of an accused to present evidence in his or her own defense." *People v Unger*, 278 Mich App 210, 249; 749 NW2d 272 (2008). That right however, is not absolute. "The right to present a complete defense may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *People v King*, 297 Mich App 465, 473; 824 NW2d 258 (2012) (quotation marks and citation omitted). For example, an "accused must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *People v Hayes*, 421 Mich 271, 279; 364 NW2d 635 (1984) (quotation marks and citation omitted). "[T]he right to present a defense extends only to relevant and admissible evidence." *People v Solloway*, 316 Mich App 174, 198; 891 NW2d 255 (2016) (quotation marks and citation omitted). " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401.

The elements of second-degree murder are: "(1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *People v Reese*, 491 Mich 127, 143; 815 NW2d 85 (2012). Malice exists when a defendant has the intent to kill, the intent to cause great bodily harm, or the intent to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm is the probable result. *People v Nowack*, 462 Mich 392, 401; 614 NW2d 78 (2000); *People v Carines*, 460 Mich 750, 759; 597 NW2d 130 (1999). With respect to the third and final form of malice referred to in the preceding sentence, our Supreme Court in *People v Reichard*, __ Mich __, __; __ NW2d __ (2020); slip op at 5, also described it as entailing an act by a defendant "with a wanton and willful disregard of the likelihood that the natural tendency of his behavior is to cause death or great bodily harm." (Quotation marks and citation omitted.) Within that very same opinion, the Supreme Court also favorably referred to caselaw that described this prong of malice as encompassing the intent to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm is the probable result. *Id.* at __; slip op at 5 n 11, citing *Nowack* and *Carines*. In *People v Goecke*, 457 Mich 442, 466; 579 NW2d 868 (1998), the Supreme Court observed the following with regard to second-degree murder and malice:

> Because depraved heart murder is a general intent crime, the accused need not actually intend the harmful result. One way of expressing this concept is that malice may be established even absent an actual intent to cause a particular result if there is wanton and wilful disregard of the likelihood that the natural tendency of a defendant's behavior is to cause death or great bodily harm.

"[M]inimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008). "The elements of involuntary manslaughter are: (1) a death caused by the defendant, (2) without legal justification or excuse, (3) while the defendant was acting in a grossly negligent manner or while committing an unlawful act that was inherently dangerous to human life." *In re Gillis*, 203 Mich App 320, 321; 512 NW2d 79 (1994).

The trial court concluded that testimony regarding PTSD and Scandalito's threat was not relevant to a viable defense because the testimony would effectively implicate the defenses of duress and diminished capacity, neither of which were legally applicable. With respect to the defense of duress, the Supreme Court in *People v Lemons*, 454 Mich 234, 246-247; 562 NW2d 447 (1997), explained:

> In order to properly raise the defense, the defendant has the burden of producing some evidence from which the jury can conclude that the essential elements of duress are present. In *People v Luther*, 394 Mich 619, 623; 232 NW2d 184 (1975), we held that a defendant successfully carries the burden of production where the defendant introduces some evidence from which the jury could conclude the following:
>
> A) The threatening conduct was sufficient to create in the mind of a reasonable person the fear of death or serious bodily harm;

B) The conduct in fact caused such fear of death or serious bodily harm in the mind of the defendant;

C) The fear or duress was operating upon the mind of the defendant at the time of the alleged act; and

D) The defendant committed the act to avoid the threatened harm. [Quotation marks and citation omitted.]

"[I]t is well established that duress is not a defense to homicide." *People v Henderson*, 306 Mich App 1, 5; 854 NW2d 234 (2014) (affirming conviction for second-degree murder that was predicated on an aiding and abetting theory and holding that duress is not a valid defense to second-degree murder even though the defendant did not commit the killing). "The rationale underlying the common law rule is that one cannot submit to coercion to take the life of a third person, but should risk or sacrifice his own life instead." *Id.* (quotation marks and citation omitted).

In *Reichard*, __ Mich at __; slip op at 1, our Supreme Court recently held "that duress may be asserted as an affirmative defense to felony murder if it is a defense to the underlying felony." In the opinion, the Court acknowledged the caselaw indicating that "duress was not permitted as an affirmative defense to murder." *Id.* at __; slip op at 7. The Court stated that the rationale for not permitting duress as a defense to murder does not apply in the felony-murder context, which "operates only to elevate a second-degree murder to first-degree murder if it was committed in the commission of one of the enumerated felonies," because "in the felony-murder context, the individual faces a choice between whether to spare his or her own life or aid in a lesser felony (i.e., one that does not include as an element the killing of an innocent)." *Id.* at __; slip op at 5-6, 10. The Court observed that second-degree murder and felony murder share the same malice requirement but explained that the duress defense operates to negate the aggravator element of felony murder, i.e., the commission of the underlying crime, which is necessary to elevate second-degree murder to felony murder. *Id.* at __; slip op at 13-14. Significantly, as relevant to the instant case, the Court stated:

With the aggravator element negated, a prosecutor would still be able to proceed against the defendant on the lesser included offense of second-degree murder if the evidence supported that charge. In other words, the defendant's duress defense to the underlying felony would only prevent the enhancement of second-degree murder to first-degree murder. [*Id.* at __; slip op at 14.]

Thus, the decision in *Reichard* appears to expressly support rejection of a duress defense to a charge of second-degree murder. That said, the *Reichard* Court also stated:

We note that several treatises state more precisely that duress is not an affirmative defense to murder or intentional homicide, as opposed to homicide generally. See, e.g., 2 LaFave, Substantive Criminal Law (3d ed), Duress, § 9.7(b) ("[D]uress is no defense to the intentional taking of life by the threatened person . . . ."); 2 Robinson, Criminal Law Defenses, Duress, § 177(g) ("If a legislature concludes that no pressure is sufficient to cause the reasonable citizen to commit murder, a rule barring a duress excuse for murder is sound."); 40 Am Jur 2d,

-4-

Homicide, § 107 ("It is generally held that neither duress, coercion, nor compulsion are defenses to murder . . . ."); 40 CJS, Homicide, § 181 ("The rule encompasses denial of the defense to all forms of murder, including homicides resulting from an intent to do grievous bodily harm, as well as an actual intent to kill and seems to include all other offenses where an intent to kill is an essential element."). *Dittis*[1] is the first Michigan case to state that duress is not a defense to "homicide," though *Dittis* involved first-degree murder. Nevertheless, as stated above, *Dittis*'s statement has been applied more broadly. See, e.g., *Moseler*, 202 Mich App at 299 (relying on *Dittis* to determine that duress is not a defense to involuntary manslaughter).[2] *We overrule Dittis and its progeny to the extent they purported to adopt this overly broad rule*. Because it is not necessary in the instant case to consider whether duress may be an affirmative defense to any form of homicide other than felony murder, we do not consider this question further. [*Reichard*, __ Mich at __; slip op at 8 n 18 (alteration and ellipses in original; emphasis added).]

This passage could be construed as suggesting that the Michigan Supreme Court would be open to allowing a duress defense to a charge of involuntary manslaughter—an offense presented to the jury here—and perhaps to even a charge of second-degree murder that is pursued solely on the malice prong regarding the creation of a very high risk of death or engaging in wanton and willful conduct. But because of the *Reichard* Court's discussion of second-degree murder, which appeared to accept that a duress defense would not be allowed regardless of the malice theory being urged, because the Supreme Court in *Reichard* ultimately limited its ruling to felony murder, and because *Henderson*, which concerned second-degree murder, remains good law, we conclude that the trial court did not err by precluding a duress defense to the charge of second-degree murder. In light of our Supreme Court's apparent rejection and overruling of *Moseler*, we decline to answer whether a duress defense should have been permitted with respect to the lesser offense of *involuntary* manslaughter. The fact that the jury found defendant guilty of the greater crime of second-degree murder renders any assumed error harmless; there was no miscarriage of justice. MCL 769.26; *Lukity*, 460 Mich at 495.[3]

Defendant argues, however, that the purpose of the PTSD evidence was not to prove that her fear of Scandalito's threat caused her to consciously choose to save her own life, but rather to

---

[1] *People v Dittis*, 157 Mich App 38; 403 NW2d 94 (1987).

[2] In *People v Moseler*, 202 Mich App 296, 299; 508 NW2d 192 (1993), this Court held that the trial court did not err in refusing to instruct the jury on the defense of duress relative to the offense of involuntary manslaughter.

[3] We recognize that had the jury been allowed to consider a duress defense to involuntary manslaughter, the jurors might possibly have pondered duress in connection with second-degree murder, even if explicitly instructed that duress was not a defense to second-degree murder. We, however, are not prepared to find prejudice on the basis of potential juror nullification. And a jury is presumed to follow its instructions. *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003).

show that Scandalito's threat triggered the PTSD-related dissociation, causing her to lose awareness and understanding of where she was and what she was doing. The trial court properly precluded this defense theory because it was the substantive equivalent of a diminished-capacity defense. In *People v Carpenter*, 464 Mich 223, 236; 627 NW2d 276 (2001), our Supreme Court rejected the continuing viability of the defense of diminished capacity, holding:

> [W]e agree with the prosecution that our Legislature, by enacting the comprehensive statutory framework described above, has already conclusively determined when mental incapacity can serve as a basis for relieving one from criminal responsibility. We conclude that, through this framework, the Legislature has created an all or nothing insanity defense. Central to our holding is the fact that the Legislature has already contemplated and addressed situations involving persons who are mentally ill or retarded yet not legally insane. As noted above, such a person may be found "guilty but mentally ill" and must be sentenced in the same manner as any other defendant committing the same offense and subject to psychiatric evaluation and treatment. MCL 768.36(3). Through this statutory provision, the Legislature has demonstrated its policy choice that evidence of mental incapacity short of insanity cannot be used to avoid or reduce criminal responsibility by negating specific intent.

Accordingly, a defense of diminished capacity is no longer viable in Michigan. See *People v Yost*, 278 Mich App 341, 354; 749 NW2d 753 (2008) ("Before the decision in *Carpenter*, a defendant who was otherwise legally sane could present evidence of some mental abnormality to negate the specific intent required to commit a particular crime.").

In *Yost*, *id.*, this Court stated that "[t]he key component of the diminished-capacity defense is the evidence that the defendant could not form the requisite intent to commit the crime." This Court explained, however, that "[a]lthough a defendant may no longer present evidence of diminished capacity to negate the intent element of a crime, there are circumstances where a defendant's mental capacity may make a fact that is of consequence to the determination of the action more or less probable without such evidence being offered to negate the specific-intent element of the charged offense." *Id*. at 355-356.

Defendant's PTSD-dissociation theory clearly fits the substance of the abolished diminished-capacity defense. Defendant argues that Scandalito's threat triggered an episode of PTSD-related dissociation in which she was unable to control herself and conform her actions to the law. Defendant argued in the trial court that her PTSD condition was analogous to involuntary intoxication[4] or a neurological blackout. This argument is without merit because the alleged

---

[4] "An individual who was under the influence of *voluntarily* consumed or injected alcohol or controlled substances at the time of his or her alleged offense is not considered to have been legally insane solely because of being under the influence of the alcohol or controlled substances." MCL 768.21a(2) (emphasis added). The defense of involuntary intoxication is allowed as part of the defense of insanity when the chemical effects of drugs or alcohol render a defendant temporarily insane. *People v Caulley*, 197 Mich App 177, 187; 494 NW2d 853 (1992). Again, defendant did not pursue an insanity defense.

dissociative state was an event that happened entirely in defendant's own mind, without the introduction of an external agent of an intoxicant or a physiological occurrence such as a seizure. Accordingly, the trial court properly excluded evidence supporting the PTSD theory because it was diminished capacity under a different name.

Defendant argues that her PTSD condition was relevant to show that she lacked the requisite malice for second-degree murder and instead was guilty only of involuntary manslaughter. Again, however, defendant was not permitted to introduce the evidence for the purpose of showing that her capacity to act with the requisite malice was diminished. And defendant fails to explain how her PTSD evidence could help prove that her conduct itself did not rise to the level of wanton and wilful conduct in disregard of the likelihood that the natural tendency of her behavior was to cause death or great bodily harm, but instead was only grossly negligent. *Goecke*, 457 Mich at 466; *Gillis*, 203 Mich App at 321.

Defendant relies on *People v Moseler*, 202 Mich App 296; 508 NW2d 192 (1993), in which the defendant became intoxicated, argued with her boyfriend, and drove away at an excessive rate of speed, causing a collision that killed the victim. The defendant claimed that her boyfriend had become angry, threatened her, and pursued her when she drove away. The defendant was convicted of involuntary manslaughter with a motor vehicle. *Id*. at 297. As noted earlier, this Court rejected the defendant's argument that the trial court should have instructed the jury on duress. *Id*. at 299. The continuing viability of *Moseler* is highly questionable given the remarks by our Supreme Court in *Reichard* that appeared to overrule *Moseler*. *Reichard*, __ Mich at __; slip op at 8 n 18. Defendant argues that *Moseler* supports her position because the trial court in *Moseler* permitted the defendant to testify regarding her argument with her boyfriend and her boyfriend's history of violence. *Moseler*, 202 Mich App at 297. In that case, however, this Court did not address the admissibility of the defendant's testimony. The mere fact that the trial court allowed the defendant's testimony in *Moseler*, the admissibility of which was not an issue on appeal, does not serve as precedent for allowing defendant's PTSD testimony in the instant case.

In sum, the trial court did not err by excluding evidence of Scandalito's threat and defendant's PTSD in relation to the offense upon which defendant was convicted—second-degree murder.[5] Therefore, we also hold that the trial court did not err by denying defendant's motion for appointment of an expert because an expert was unnecessary in connection with second-degree murder or, alternatively, as to involuntary manslaughter, any assumed error in regard to an expert was harmless. See MCL 775.15 (provides a procedure for an indigent defendant to obtain court funding for payment of defense witnesses "without whose testimony he cannot safely proceed to a trial . . ."); *Carnicom*, 272 Mich App at 617 ("Without an indication that expert testimony would likely benefit the defense, a trial court does not abuse its discretion in denying a defendant's motion for appointment of an expert witness."); MCL 769.26 (error does not warrant reversal absent a miscarriage of justice).

---

[5] Again, assuming that a duress defense should have been permitted in regard to the offense of involuntary manslaughter, thereby allowing testimony on the issue, we find the presumed evidentiary error harmless. MCL 769.26; *Lukity*, 460 Mich at 495.

## III. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises additional issues in a pro se supplemental brief, filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, none of which warrants appellate relief.

## A. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that there were multiple instances of ineffective assistance of counsel. Defendant did not raise these claims in the trial court, and this Court denied defendant's motion to remand for a *Ginther*[6] hearing. *People v Gafken*, unpublished order of the Court of Appeals, entered September 6, 2019 (Docket No. 345954). Therefore, our review of defendant's claims is limited to mistakes apparent from the record. *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005).

Whether counsel was ineffective presents a mixed question of fact and constitutional law, which we review, respectively, for clear error and de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). In *People v Carbin,* 463 Mich 590, 599-600; 623 NW2d 884 (2001), our Supreme Court recited the governing principles applicable to a claim of ineffective assistance of counsel:

> To justify reversal under either the federal or state constitutions, a convicted defendant must satisfy [a] two-part test . . . . First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not performing as the counsel guaranteed by the Sixth Amendment. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. Second, the defendant must show that the deficient performance prejudiced the defense. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. [Quotation marks and citations omitted.]

An attorney's performance is deficient if the representation falls below an objective standard of reasonableness. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000).

Defendant argues that defense counsel was ineffective by failing to give an opening statement. The decision whether to make an opening statement is a matter of trial strategy. *People v Odom*, 276 Mich App 407, 416; 740 NW2d 557 (2007). In this case, defense counsel initially reserved giving an opening statement, and then later, after the prosecution rested and just before defendant was called to testify, waived an opening statement. Defendant argues that the failure to give an opening statement deprived her of an opportunity to develop a "coherent theory of the

---

[6] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

case." The omission of an opening statement is rarely, if ever, the basis for a successful claim of ineffective assistance of counsel. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). The prosecutor's theory of guilt was based on defendant's conduct during a relatively brief police pursuit that tragically ended in a violent collision that killed a person. Defendant does not explain why an opening statement was necessary to enable the jury to understand and follow the evidence. Indeed, she does not identify any specific defense theory or information counsel should have relayed to the jury in an opening statement. Defendant has not overcome the presumption that trial counsel's decision constituted sound trial strategy, nor has she demonstrated a reasonable probability that the outcome of the trial would have been different if an opening statement had been given.

Defendant also argues that defense counsel was ineffective for not introducing testimony through the police officer who attempted to pull defendant over and a hospital trauma coordinator whom defendant told that she fled because the men in her car had threatened her. At trial, defense counsel attempted to cross-examine the officer regarding defendant's statements, but the trial court excluded the statements as inadmissible hearsay. Defendant contends that counsel should have argued for admission of her statements under the hearsay exceptions for excited utterances, MRE 803(2), for statements of the declarant's present emotional or physical condition, MRE 803(3), and for records of regularly conducted activity, MRE 803(6). Assuming that a hearsay exception applied, the testimony would only have been relevant to duress and diminished capacity; therefore, for the reasons discussed earlier, there was no deficient performance (second-degree murder) or, if the performance did fall below an objective standard of reasonableness (involuntary manslaughter), the requisite prejudice was not demonstrated.

Defendant also argues that defense counsel was ineffective for failing to request correction of her presentence investigation report (PSIR). As explained in Section III(C), *infra*, defendant has not established that the PSIR contains an error. Therefore, defendant has not shown that counsel's failure to challenge the accuracy of the PSIR was objectively unreasonable. Counsel is not ineffective for failing to raise futile or meritless objections. *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000).

Given our analysis of the foregoing ineffective-assistance claims, we also reject defendant's argument that the cumulative effect of several errors by counsel were sufficiently prejudicial to deprive defendant of a fair trial. *LeBlanc*, 465 Mich at 591-592.

B. JURY INSTRUCTION ON SECOND-DEGREE MURDER

Defendant argues that the trial court erred by denying her request to instruct the jury on second-degree murder strictly in accordance with M Crim JI 16.5. "Claims of instructional error are generally reviewed de novo by this Court, but the trial court's determination that a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion." *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). This Court reviews jury instructions as a whole to determine whether error requiring reversal occurred. *People v Bartlett,* 231 Mich App 139, 143; 585 NW2d 341 (1998).

The trial court instructed the jury as follows on the elements of second-degree murder:

> The Defendant is charged with the crime of second degree murder. To prove this charge, the Prosecutor must prove each of the following elements beyond a reasonable doubt:
>
> First, that the Defendant ca[u]sed the death of Kristine Donahue, that is, Kristine Donahue died as a result of Defendant crashing her vehicle into Ms. Donahue's vehicle.
>
> Second, that the Defendant acted with one of these three states of mind:
>
> She intended to kill, or she intended to do great bodily harm to Kristine Donahue, *or she acted with wanton and willful disregard of the likelihood that the natural tendency of her conduct is to cause death or great bodily harm.* [Emphasis added.]

The model instruction for second-degree murder, M Crim JI 16.5, describes the malice element as follows:

> [T]hat the defendant had one of these three states of mind: [he / she] intended to kill, or [he / she] intended to do great bodily harm to [*name deceased*], or [he / she] *knowingly created a very high risk of death or great bodily harm knowing that death or such harm would be the likely result of [his / her] actions.* [Emphasis added.]

The difference between the trial court's instruction on second-degree murder and M Crim JI 16.5 is the very difference that we discussed earlier in this opinion. Pertinent portions of the Model Criminal Jury Instructions "must be given" if they are applicable, accurate, and requested by a party. MCR 2.512(D)(2). In *Reichard*, ___ Mich at ___; slip op at 5, our Supreme Court recently stated that "[a]s in every murder case, . . . it must be shown that [the defendant] acted with intent to kill or to inflict great bodily harm or with a wanton and willful disregard of the likelihood that the natural tendency of his behavior is to cause death or great bodily harm." (Quotation marks and citation omitted.) Again, the *Reichard* Court also recognized the language in M Crim JI 16.5 as being accurate. *Id.* at ___; slip op at 5 n 11. We can only surmise that the Michigan Supreme Court is of the view that both provisions are legally sound, accurate, and applicable and are essentially interchangeable with no relevant difference. There is no indication in the caselaw that particular circumstances justify using one provision over the other. But considering the mandatory nature of MCR 2.512(D)(2), we agree the "knowingly created a very high risk" language found in M Crim JI 16.5 "must be given" if requested. Therefore, the trial court erred by not instructing the jury pursuant to M Crim JI 16.5. Given, however, that there is no meaningful difference between the two versions, the error was harmless. MCL 769.26; *Lukity*, 460 Mich at 495.

## C. CORRECTION OF THE PSIR

Defendant argues that this case should be remanded for correction of an error in her PSIR. We disagree. At sentencing, a defendant may challenge the accuracy or relevancy of any information contained in a presentence report. *People v Waclawski*, 286 Mich App 634, 689; 780

NW2d 321 (2009). "If the court finds that challenged information is inaccurate or irrelevant, that finding must be made part of the record and the information must be corrected or stricken from the report." *Id.* at 690. In this case, however, defendant did not challenge the disputed information at sentencing. The alleged inaccuracy involves the timing of a blood draw after defendant's arrival at the hospital and whether it occurred before or after pain medications were administered. The PSIR referenced a statement made to an officer by the "Director of ICS" about a blood draw being done upon defendant's arrival at the hospital and before medications were administered. The record does not establish that this statement was inaccurate: the trial testimony cited by defendant did not identify the witness as the "Director of ICS," and the number of blood draws was never definitively fixed or shown. Remand is unwarranted.

## D. SCORING THE SENTENCING GUIDELINES

Defendant argues that offense variables (OVs) 8, 12, and 19 of the sentencing guidelines were erroneously assessed. The trial court scored the guidelines for defendant's conviction of second-degree murder, MCL 750.317, which is a Class M2 offense, MCL 777.16p, governed by the sentencing grid in MCL 777.61. Defendant received a total OV score of 150 points, placing her at OV level III (100 or more points) on the grid. Her prior record variable (PRV) score of two points placed her at PRV level B (1 to 9 points). These scores resulted in a minimum sentence guidelines range of 180 to 300 months or life. MCL 777.61. The trial court sentenced defendant within this range to a term of 20 to 30 years' imprisonment.

Fifty total OV points were assessed on the OVs defendant is challenging on appeal. Therefore, even if we were to conclude that all of the challenged OVs were erroneously scored, the errors would not entitle defendant to resentencing because it would only decrease defendant's total OV score from 150 to 100 points, maintaining them at OV level III—the highest level of severity. Therefore, the scoring of the three OVs at issue does not affect defendant's guidelines range. MCL 777.61. Finally, when a scoring error does not alter the appropriate guidelines range, a defendant is simply not entitled to resentencing. *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006). Accordingly, we need not examine the substance of defendant's arguments.

We affirm.

/s/ Christopher M. Murray
/s/ Kathleen Jansen
/s/ Jane E. Markey