*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DANIEL JOSEPH LOXTON,

        Defendant-Appellant.

UNPUBLISHED
March 17, 2025
1:43 PM

No. 366320
St. Clair Circuit Court
LC No. 22-001834-FH

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DAVID JAMES LOXTON,

        Defendant-Appellant.

No. 366403
St. Clair Circuit Court
LC No. 22-001835-FH

Before: MALDONADO, P.J., and PATEL and WALLACE, JJ.

PER CURIAM.

These consolidated cases arose from an armed confrontation at the KOA campgrounds in Kimball Township.

In Docket No. 366320, defendant Daniel Loxton appeals by right his jury-trial convictions of three counts of assault with a dangerous weapon (felonious assault), MCL 750.82, three counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, reckless use of a firearm, MCL 752.863a, and possession of a firearm under the influence of alcohol, MCL 750.237(2). The trial court sentenced Daniel to serve concurrent prison terms of 18 months to 4 years for each of the assault convictions, and 90 days for each of the firearms convictions. The court additionally sentenced Daniel to serve two years' imprisonment for each

-1-

felony-firearm conviction, to be served concurrently with each other but consecutive to their respective underlying felony sentences.

In Docket No. 366403, defendant David Loxton was found guilty by a jury of being a felon in possession a firearm (felon-in-possession), MCL 750.224f(2), being a felon in possession of ammunition (felon-in-possession of ammunition), MCL 750.224f(4), two counts of felony-firearm, and possession of a firearm while under the influence of alcohol. The trial court sentenced David as a fourth habitual offender, MCL 769.12, to serve 30 months' to 40 years' imprisonment for felon-in-possession, 30 months' to 40 years' imprisonment for felon-in-possession of ammunition, 93 days' imprisonment of possession of a firearm while under the influence of alcohol, and two years' imprisonment for each count of felony-firearm to be served concurrently with each other but consecutive to their respective underlying felony sentences. The jury found David not guilty of three counts of felonious assault, and three related counts of felony-firearm. David appeals his sentences by right.

Defendants were tried jointly, and these appeals were consolidated "to advance the efficient administration of the appellate process." *People v Loxton*, unpublished order of the Court of Appeals, entered July 31, 2024 (Docket Nos. 366320 and 366403). We affirm.

## I. FACTS

This case arises from an incident on July 16, 2022, when defendants—who are twin brothers—were riding minibikes on trails near a campground. The victims in this case were 26-year-old JB, JB's 15-year-old brother WB, and WB's 15-year-old friend OS. The three were walking on a trail back toward their campsite when defendants drove past them on their minibikes. Defendants stopped to ask if the victims had any marijuana. The victims said no, so defendants left. When defendants drove past the victims again approximately 15 minutes later, JB made a hand gesture to the motorcyclists, raising his thumb and little finger in a "hang loose" gesture intended to communicate enjoyment. David jumped off his mini bike to confront JB, pulled a gun out from his waistband, and handed the gun to Daniel, saying he did not want to lose it. The victims fled while Daniel fired the gun several times in various directions, with one shot hitting the ground by JB's feet. When the victims began yelling for a camper to call the police, defendants returned to their minibikes and rode away. The police arrived and located defendants, both of whom were severely intoxicated. Defendants were ultimately convicted as described earlier, and this appeal followed.

## II. DOCKET NO. 366320

## A. RIGHT TO PRESENT A DEFENSE

Daniel argues that MCL 768.37, which bars defendants from asserting voluntary intoxication as a defense, violates his constitutional right to present a defense. We disagree.

It is undisputed that this argument was not raised in the trial court, and the issue is, therefore, unpreserved. Unpreserved constitutional issues are reviewed for plain error affecting substantial rights. *People v King*, 512 Mich 1, 10; 999 NW2d 670 (2023). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error

was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "A 'clear or obvious' error under the second prong is one that is not subject to reasonable dispute." *People v Randolph*, 502 Mich 1, 10; 917 NW2d 249 (2018) (quotation marks and citation omitted). Even if the three requirements are met, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Carines*, 460 Mich at 763 (quotation marks, citation, and alteration omitted).

"Few rights are more fundamental than that of an accused to present evidence in his . . . own defense." *People v Unger*, 278 Mich App 210, 249; 749 NW2d 272 (2008). Defendant argues that the Legislature violated this right by enacting MCL 768.37(1), which provides that "it is not a defense to any crime that the defendant was, at that time, under the influence of or impaired by a voluntarily and knowingly consumed alcoholic liquor . . . ." Put differently, the statute bars voluntary intoxication as a defense to specific intent crimes. The United States Supreme Court rejected this argument with respect to the United States Constitution when it decided *Montana v Egelhoff*, 518 US 37, 56; 116 S Ct 2013; 135 L Ed 2d 361 (1996). Nevertheless, Daniel invites us to adopt a broader interpretation of the Michigan Constitution's due process rights.

We again note that this issue is unpreserved. Thus, for Daniel to prevail, we must not only conclude that the 1963 Michigan Constitution offers greater due process protection than its United States counterpart regarding the defense of voluntary intoxication; we also must determine that such a conclusion is not subject to reasonable dispute. See *Randolph*, 502 Mich at 10. The trial court's failure to sua sponte declare MCL 768.37 unconstitutional in spite of the United States Supreme Court's contrary holding in *Egelhoff* cannot be described as a clear or obvious error. See *Carines*, 460 Mich at 763. The fact that a recent panel of this Court recently rejected the same argument against the statute's constitutionality further cements our conclusion that, at a minimum, Daniel's contention is "subject to reasonable dispute." *Randolph*, 502 Mich at 10. See *People v Soriano*, unpublished per curiam opinion of the Court of Appeals, issued May 30, 2024 (Docket No. 359165), pp 9-13. Unpublished opinions are not binding but can be persuasive. *People v Kloosterman*, 296 Mich App 636, 641 n 2; 823 NW2d 134 (2012). The opinion is particularly persuasive because the issue is not whether the previous panel was correct but whether its conclusion was reasonable. Therefore, Daniel cannot establish plain error.

Defendant also argues that the prosecution failed to present sufficient evidence to support a finding of the requisite intent. However, the thrust of his argument is actually a restatement of his challenge to the constitutionality of MCL 768.37. Defendant argues that the intent element was not proven beyond a reasonable doubt because he was intoxicated. Defendant acknowledges that intoxication is not a valid defense but argues that the statute barring the defense of voluntary intoxication is unconstitutional. Because defendant's attack on the constitutionality of MCL 768.37 cannot prevail, the sufficiency argument premised on the statute's invalidation also cannot prevail.

## B. FLIGHT INSTRUCTION

Daniel argues that the trial court violated his right to due process by reading the "flight" instruction to the jury despite a lack of evidence that he and David fled. We disagree.

-3-

"A criminal defendant has the right to have a properly instructed jury consider the evidence against him." *People v Mills*, 450 Mich 61, 80; 537 NW2d 909 (1995). Questions of law involving jury instructions are reviewed de novo, and whether a trial court's decision concerning whether a jury instruction is applicable to the facts of a case is reviewed for abuse of discretion. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Bergman*, 312 Mich App 471, 483; 879 NW2d 278 (2015) (quotation marks and citation omitted). Even flawed instructions "do not create error if they fairly present to the jury the issues tried and sufficiently protect the defendant's rights." *People v Bartlett*, 231 Mich App 139, 143-144; 585 NW2d 341 (1998).

At the conclusion of a trial, the court is required to "instruct the jury as required and appropriate . . ." MCR 2.513(N)(1). MCR 2.512(B)(2) provides, "Before or after arguments or at both times, as the court elects, the court shall instruct the jury on the applicable law, the issues presented by the case, and, if a party requests . . . that party's theory of the case." The trial court "must properly instruct the jury so that [the jury] may correctly and intelligently decide the case. The instruction to the jury must include all elements of the crime charged, and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them." *People v Traver*, 502 Mich 23, 31; 917 NW2d 260 (2018) (quotation marks and citations omitted). The Michigan Court rules require the reading of Michigan's Model Jury instructions if the instructions "are applicable," the instructions "accurately state the applicable law, and" the instructions "are requested by a party." MCR 2.512(D)(2). There must be evidence to support jury instructions about the "elements of the charged crimes," along with "material issues, defenses, or theories." *People v McKinney*, 258 Mich App 157, 162-163; 670 NW2d 254 (2003).

In this case, over Daniel's objection, the trial court instructed the jury as follows, consistent with M Crim JI 4.4:

> There has been some evidence that the defendant ran away after the alleged crime.

> This evidence does not prove guilt. A person may run or hide for innocent reasons, such as panic, mistake or fear. However, a person may also run or hide because of a consciousness of guilt.

> You must decide whether the evidence is true and, if true, whether it shows that the defendant had a guilty state of mind.

Daniel argues that the evidence did not support offering this instruction because "it was the complainants who fled" whereas he and David "remained on the trail and were apprehended there." It is undisputed that there was evidence that defendants departed on their minibikes after the incident, but "mere departure from the scene is insufficient to" support a flight instruction. *People v Hall*, 174 Mich App 686, 691; 436 NW2d 446 (1989). Nevertheless, there was evidence from which a fact-finder could reasonably find that defendants left the scene in a manner suggesting that they "feared apprehension." *Id*.

-4-

When asked how the interaction ended, WB testified that defendants "ran back to their minibikes and took off." WB explained the manner of defendants' departure:

> *Q.* Do you recall if they were walking or running back to their minibikes?
>
> *A.* They were walking at first and then once they heard us like telling all the people that's when I'm pretty sure they started running.
>
> *Q.* Okay. What were you telling other people?
>
> *A.* Warning them that they had weapons.
>
> *Q.* Okay. Did you mention anything about 911?
>
> About anybody calling 911?
>
> *A.* Oh, yes yes. We told them to call 911.
>
> *Q.* Okay. And this is when these individuals started running back to their minibikes?
>
> *A.* Correct.

WB's testimony that defendants initially walked toward their minibikes but began running when the victims yelled for others to summon the police supports an inference that they were attempting to avoid apprehension. The potential for this inference is bolstered by JB's testimony that the confrontation ended when defendants "fled." Finally, we note that the instruction provided that the jury "must decide whether the evidence" of flight was true and whether it demonstrated "a guilty state of mind." Thus, Daniel was free to argue to the jury that defendants did not flee or that they had a lawful reason for leaving.

In conclusion, the trial court did not abuse its discretion by reading the flight instruction to the jury.

### III. DOCKET NO. 366403

David argues that he is entitled to resentencing because the trial court erred by assessing 10 points for OV 9 and OV 14. We disagree.

This Court reviews the trial court's factual determinations at sentencing for clear error. See *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.*

"A defendant is entitled to be sentenced by a trial court on the basis of accurate information." *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006). The court must consult the sentencing guidelines and assess the highest amount of possible points for all offense variables. *People v Lockridge*, 498 Mich 358, 392 n 28; 870 NW2d 502 (2015). A trial court relies on

inaccurate information when it sentences a defendant by consulting an inaccurate advisory guidelines range. *Francisco*, 474 Mich at 89 n 7. "A sentencing court has discretion in determining the number of points to be scored, provided that evidence of record adequately supports a particular score." *People v Dickinson*, 321 Mich App 1, 21; 909 NW2d 24 (2017) (quotation marks and citation omitted). "The sentencing offense determines which offense variables are to be scored in the first place, and then the appropriate offense variables are generally to be scored on the basis of the sentencing offense." *People v Sargent*, 481 Mich 346, 348; 750 NW2d 161 (2008). The trial court's factual determinations regarding offense variables must be supported by a preponderance of the evidence. *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008). "The trial court may rely on reasonable inferences arising from the record evidence to sustain the scoring of an offense variable." *People v Earl*, 297 Mich App 104, 109; 822 NW2d 271 (2012).

## A. OV 9

"Offense variable 9 is number of victims." It is appropriate to assess 10 points when "[t]here were 2 to 9 victims who were placed in danger of physical injury or death . . . ." MCL 777.39(1)(c). "Offense variables must be scored giving consideration to the sentencing offense alone . . . ." *People v McGraw*, 484 Mich 120, 133; 771 NW2d 655 (2009). In this case, the sentencing offense was felon-in-possession. At a hearing on defendant's postconviction motion to correct an invalid sentence, the prosecution agreed that OV 9 should have been assessed at zero points because David did not place anyone in danger with his handling of the pistol that he handed to Daniel. See *People v Biddles*, 316 Mich App 148, 167; 896 NW2d 461 (2016) (holding that it was inappropriate to assess 10 points for OV 9 because the "defendant's commission of the offense of felon-in-possession, in and of itself, simply did not place anyone in danger of physical injury or death"). The trial court agreed and accepted the stipulation of the parties to assess zero points for OV 9. The reduction of the total OV score from 25 to 15 by removing 10 points for OV 9 lowered David's guidelines range, as a fourth habitual offender, from 12 to 48 months, to 10 to 46 months, see MCL 777.66. However, the trial court declined to resentence David because the 30-month minimum sentence actually imposed remained within the adjusted guidelines range, and the trial court stated it would issue the same sentence despite that adjustment. "Thus, resentencing is not required because the trial court has clearly indicated that it would have imposed the same sentence regardless of the scoring error and the sentence falls within the appropriate guidelines range." *People v Latham*, 334 Mich App 501, 506; 965 NW2d 248 (2020) (quotation marks, citation, and alterations omitted).[1]

---

[1] David also argues that defense counsel rendered ineffective assistance by failing to object to OV 9 at his original sentencing hearing. "To prevail on a claim of ineffective assistance, a defendant must, at a minimum, show that (1) counsel's performance was below an objective standard of reasonableness and (2) a reasonable probability exists that the outcome of the proceeding would have been different but for trial counsel's errors." *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018) (quotation marks, citation, and alteration omitted). The trial court's declaration that it would have imposed the same sentence had OV 9 been properly scored defeats the second prong.

## B. OV 14

"Offense variable 14 is the offender's role." MCL 777.44(1). It is appropriate to assess 10 points for OV 14 when "[t]he offender was a leader in a multiple offender situation." MCL 777.44(1)(a). "A 'multiple offender situation' is one in which more than one person—up to several or many persons—participates in a violation of the law." *People v Ackah-Essien*, 311 Mich App 13, 38-39; 874 NW2d 172 (2015). In this case, it is undisputed that there was a multiple offender situation; therefore, this issue is whether David was the leader. "A 'leader' is a person who acts as a guiding or directing head of a group." *Id*. at 39 (quotation marks and citation omitted). "[T]o 'lead' is defined in relevant part as, in general, guiding, preceding, showing the way, directing, or conducting." *Dickinson*, 321 Mich App at 22 (quotation marks and citation omitted). "For purposes of an OV 14 analysis, a trial court should consider whether the defendant acted first or gave directions or was otherwise a primary causal or coordinating agent." *People v Baskerville*, 333 Mich App 276, 300; 963 NW2d 620 (2020) (quotation marks, citation, and alteration omitted). "The entire criminal transaction should be considered when scoring this variable." MCL 777.44(2)(a).

The trial court offered the following rationale in support of its decision to assess 10 points for OV 14:

> [T]here is sufficient evidence for him to be scored as a leader under the sentencing guidelines scheme. I don't think that he perhaps set out to be a leader on that particular day, but his conduct was such that he was leading the charge, so to speak. He was orchestrating actions of himself and his brother and he was the one that was initiating those things and because of that that [sic] in my view is sufficient to characterize him as a leader between he and his brother Daniel. And as [the prosecuting attorney] pointed out, even when it looks like it's over and the victims are still running he still wants to engage in some sort of altercation. He is continuing to lead and orchestrate a set of circumstances to his satisfaction.

The record supports the trial court's finding that David was the leader of this criminal transaction, even though he did not commit the felonious assaults of which Daniel was convicted. The evidence indicated that David and Daniel were riding their minibikes near the victims when a JB made a benign social gesture; David responded by riding his minibike near JB and disembarking to physically confront him. David furthered the confrontation by challenging the JB, asking whether he had a "problem." David then brandished the pistol and handed it to Daniel. After the victims fled, David pursued and caught up to JB to confront him again. In sum, the evidence that David initiated the confrontation, escalated it by brandishing a gun, and continued pursuing the victims after Daniel began shooting supports the trial court's conclusion that David was the leader.

Affirmed.

/s/ Allie Greenleaf Maldonado
/s/ Sima G. Patel
/s/ Randy J. Wallace